Walter **GAINVILLE,** Hyman Kramer, Arthur Camer, Philip Saponaro, Ralph Aims, Frank McGillvray, William Manzel,

v.

Elliot **RICHARDSON,** Secretary of Health, Education, and Welfare, and Robert M. Ball, Commissioner of the Social Security Administration.

**Civ. A. No. 70–204.**

United States District Court,
D. Massachusetts.

Oct. 29, 1970.

Morris M. Goldings, Joel Z. Eigerman, Mahoney, McGrath, Atwood, Piper & Goldings, Gertrude Weiner, Boston Legal Assistance Project, Boston, Mass., for plaintiffs.

James Barnes, Atty., Civil Division, Dept. of Justice, Herbert F. Travers, Jr., U. S. Atty., James N. Gabriel, Asst. U. S. Atty., for defendant.

Before McENTEE, Circuit Judge, WYZANSKI, Chief District Judge, and GIGNOUX, District Judge.

OPINION

WYZANSKI, Chief District Judge.

This case is before the court on defendant's motion to dismiss the complaint on grounds of lack of jurisdiction and failure to state a cause of action.

This is a class action brought by seven plaintiffs claiming that, as applied to them and others in their class, § 203(f)(3) of the Social Security Act, 42 U.S.C. § 403(f)(3)—a provision for deducting earned income from old age benefits otherwise payable—denies each plaintiff the due process of law guaranteed by the Fifth Amendment.

The Social Security Act, so far as here material, provides for payments of federal old-age benefits based upon a person's record of earnings in employment covered by the Act. Eligibility depends on satisfying statutory conditions as to (1) employment in covered employment [see § 210(a), 42 U.S.C. § 410 (a)]; (2) the requisite number of "quarters of coverage" [see §§ 213–215, 42 U.S.C. §§ 413–415]; and (3) attainment of the retirement age of 65 in the case of men and 62 in the case of women. [See Pub.L. 87–64, Title 1 § 102(c), Act of June 30, 1961, 75 Stat. 131, 134.]

Entitlement to benefits once gained is partially or totally lost if the beneficiary has earnings in excess of $1200 annually from employment. In essence, the Social Security Act provides for monthly benefits [see §§ 202 and 203, 42 U.S.C. §§ 402, 403] from which there are to be deducted so-called excess earnings, that is wages and self-employment income above a certain amount. [See §§ 203(b) and (f)(1), 42 U.S.C. §§ 403(b) and (f) (1)]. For purposes of the aforesaid provisions it is further provided in § 203 (f)(3) of the Act, 42 U.S.C. § 403(f) (3),—that is, in the section now challenged—as follows:

"* * * an individual's excess earnings for a taxable year shall be his earnings for such year in excess of the product of $140 multiplied by the number of months in such year, except that of the first $1,200 of such excess (or all of such excess if it is less than $1,200), an amount equal to one-half thereof shall not be included. The excess earnings as derived under the preceding sentence, if not a multiple of $1, shall be reduced to the next lower multiple of $1."

These are the practical effects of the quoted formula. For each month that an old age beneficiary under the age of 72 earns in excess of $140, his benefits are reduced by one dollar for every two earned up to an additional $100 in any month, and by one dollar for every one dollar earned thereafter. Thus any old age beneficiary under the age of 72 who works at a steady pace throughout the year is effectively limited to earning $1,680 in any year or else he faces the loss of some social security benefits. For every two dollars earned between $1,680 and $2,880 per year, the beneficiary forfeits one dollar of benefits. For every dollar over $2,880 earned per year, the beneficiary forfeits one dollar of benefits.

Three of the seven plaintiffs make parallel allegations. Plaintiffs Ralph Aims, Frank McGillvray and William Manzel, each allege that (1) he has made involuntary contributions to the Social Security Trust Fund, through the payment of Social Security taxes; (2) he is a fully insured individual within the meaning of 42 U.S.C. § 414(a); (3) he has been deprived and will be deprived hereafter of old age benefits to which he would otherwise be entitled in a sum in excess of $10,000 and has been deterred and will be deterred hereafter from earning income in excess of $10,000 by the application or threatened application of 42 U.S.C. § 403(f)(3). The other four plaintiffs' allegations add nothing, and in each instance fall somewhat short of the allegations of Aims, McGillvray and

Manzel.[1] Hence plaintiffs will be at no disadvantage if in considering the present motion we concentrate on Aims' case as being the strongest.

Aims' claim that the threatened application to him of § 403(f) (3) has deprived and will deprive him of $10,000 in benefits to which he would otherwise be entitled, and has deterred him and will deter him from earning $10,000 arises under the Constitution and laws of the United States and involves the requisite jurisdictional amount. 28 U.S.C. § 1331.

Plaintiff Aims is not debarred from seeking judicial relief by the general doctrine that he must first exhaust his administrative remedies, nor by the more specific provisions of § 205(h) of the Social Security Act, 42 U.S.C. § 405 (h). The general doctrine is inapplicable because here plaintiff claims that the statutory provision permitting deduction is unconstitutional. Where a plaintiff attacks the constitutionality of the statute under which an administrative agency acts, and the attack does not turn upon a factual determination requiring administrative expertise, the doctrine of exhaustion of administrative remedies does not apply. Public Utilities Commission of Cal. v. United States, 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470; Oestereich v. Selective Service Board, 393 U.S. 233, 242, 89 S.Ct. 414, 21 L.Ed.2d 402.

Nor are the specific provisions of § 205(h) of the Social Security Act, 42 U.S.C. § 405(h) a bar. That section merely provides that:

"No action against the United States, the Secretary [of HEW], or any officer or employee thereof shall be brought under section 41 [now 28 U. S.C. § 1331] to *recover on any claim* arising under this subchapter." [emphasis added.]

In the present action, while plaintiff does, perhaps improperly, seek damages, his complaint also has prayers for a de-

claratory judgment that § 203(f) (3) of the Social Security Act, 42 U.S.C. § 403 (f) (3) is unconstitutional, and for an injunction restraining defendant from applying that section. If he were to be successful with respect to those prayers, plaintiff would not, in the language of the statute, "recover on any claim" for benefits. For recovery of benefits he would still need to resort to the administrative process. The only effect of a declaratory judgment or injunction by this court would be to preclude the Secretary from making the challenged deduction.

There is another reason why the general doctrine of exhaustion of administrative remedies and the specific provisions of 42 U.S.C. § 405(h) do not apply. Plaintiff Aims seeks a declaratory judgment with respect to the application of 42 U.S.C. § 403(f) (3) to amounts he may earn hereafter. There is no way that that issue may be submitted for administrative determination. The only remedy is by an action for a declaratory judgment or an injunction.

We now turn to the substantive issues raised by the complaint. Plaintiffs' principal contention is that they are denied the equal protection of the laws because from old age benefits otherwise payable earned income is deductible, although unearned income is not deductible.

Plaintiffs' cardinal error is in disregarding the nature of the social insurance provided by the old age benefit system established by the Social Security Act. That system is for retirement benefits to replace lost earnings. As Secretary of H. E. W., Wilbur J. Cohen, in his letter of January 7, 1969, to Speaker John W. McCormack stated, "what people have been paying for is a retirement benefit * * * the whole purpose of a retirement system * * * is to pay benefits to partially replace lost earnings". See The Retirement Test Under

---

1. Thus neither Gainville nor Saponaro alleges that he is a fully insured individual. Neither Kramer nor Camer alleges that he will be deterred from earning income. Gainville does not allege that he has been deprived of benefits.

Social Security, Letter from The Secretary of Health, Education, and Welfare, transmitting a report resulting from a study of the retirement test pursuant to Public Law 90–248, The Social Security Amendments of 1967. H.Doc.No. 91–40, 91st Cong., 1st Session, p. III.

From its inception in 1935 the Social Security old-age benefit system was designed to provide insurance against the failure to receive a particular kind of earned income. This is shown by the provision in § 202(d) of the original act, 49 Stat. 620, 623, that then old age benefits were not payable for any month for which a person received wages in covered employment. It is a misunderstanding to treat this insurance system as though it were addressed to the risks of the aged poor as such. It is a system that covers both rich and poor insofar as they receive earned income in covered employment and have retired from employment. While not irrelevant, the statement of Mr. Justice Cardozo in Helvering v. Davis, 301 U.S. 619, 641, 57 S.Ct. 904, 909, 81 L.Ed. 1307 that "The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near" tends to be misleading. The test of a right to a benefit is not poverty nor even old age—but, in general, former employment in taxable occupations, plus attainment of a prescribed age, plus present retirement from work.

It is obviously rational to make benefits depend not upon need but upon the failure to receive a specific kind of income. This is especially true when, as here, contributions have been exacted in the light of the particular risk of that possible failure.

Moreover, Congress has a rational basis for not providing for deductions for unearned income. First, unearned income has little relevance to the central purpose of a retirement benefit system intended to compensate for loss of earned income. Second, unearned income plays no part in the taxation or other aspects of the old age benefit system. Third, to make a deduction would create disincentives to saving. As Secretary Cohen, in the letter previously quoted, noted "If benefits were withheld because the person had income from savings, investments, a private pension plan or the like, the program would discourage people from saving in their productive years to have a more comfortable life in retirement than social security benefits alone can make possible." Fourth, if deductions were to be made for unearned income a new set of problems of administration, valuation, computation and reporting would be presented.

But plaintiffs seem to contend that even if Congress has a rational basis for not making deductions from benefits on account of unearned income it has no rational basis for making deductions of earned income when it does not simultaneously make deductions for unearned income. The short and adequate answer is the one already given: that it is rational to have a retirement benefit system in which benefits are related to failure to receive a particular type of earned income,

In effect, plaintiffs are claiming that they are as deserving of getting a full benefit as are persons who have retired and have unearned income. The due process clause of the Fifth Amendment (even if construed to include a guarantee of equal protection of the laws) does not usually require Congress if it provides benefits for A to provide benefits for B merely because B is in the same economic plight as A. It can hardly be supposed that if Congress appropriates money for victims of a disaster in Texas it must appropriate money for victims of a disaster in Massachusetts. Nor does the due process clause require Congress when it is directing the distribution of a particular welfare fund to make distribution to all persons on the basis of equality of need. It may establish classifications reasonably related to the purposes of the fund. In the area of economics and social welfare, all that is required is that the classifications have some rea-

**20**

sonable basis. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed. 2d 491. Surely it is reasonable to make a classification making payments depend upon the attainment of a prescribed age, even though some persons under that age are in greater need than others who have attained it. It has been held reasonable to make payments to women at an earlier age than men, although some elderly women are more affluent than men of the same age. Gruenwald v. Gardner, 390 F.2d 591 (2nd Cir.). And in view of differences between a deduction of earned income and of unearned income, such as the four already recited, the classification here has a reasonable basis. "Whether wisdom or unwisdom resides in the scheme of benefits * * * it is not for us to say." Helvering v. Davis, 301 U.S. 619, 644, 57 S.Ct. 904, 910. "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435.

■ What has been said also applies to the claim that plaintiffs have been denied due process of law because full old age monthly benefits, without a deduction for earned income, are available to an eligible worker who has reached the age of 72. [See § 203(f) (1) of the Act, 42 U.S.C. § 403(f) (1)]. If a classification based upon attainment of a prescribed age is permissible as a test of eligibility for benefits it is also permissible as a test of non-deductibility of earned income. While it is not always true, it is generally true that persons over 72 have been contributing for a longer time than persons under 72, and are likely to have fewer years of retirement ahead of them. See Sen.Rept.No. 1987, 83rd Cong., 2nd Sess., p. 18. " 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical,

it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161.

■ Finally, plaintiffs allege that they are denied due process because the deduction of earned income is on a monthly not an annual accounting basis. This point is nearly frivolous. Any accounting period is *ex necessitate* to some extent arbitrary. But a Congressional choice keyed to a monthly calendar does not deny due process merely because it makes it possible for some persons to schedule their work to minimize their deductions.

Complaint dismissed for failure to state a cause of action.