Deborah MORRIS et al., Plaintiffs,

v.

Elliot L. RICHARDSON, In his Official Capacity as Secretary of Health, Education and Welfare, Defendant.

Michelle GAY, An Infant by Her Mother and Next Friend, Joan B. Gay, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

Elliot L. RICHARDSON, In his Official Capacity as Secretary of Health, Education and Welfare, Defendant.

Civ. A. Nos. 15706, 15733.

United States District Court,
N. D. Georgia,
Atlanta Division.

July 20, 1972.

David A. Webster, David G. Crockett, Jay E. Loeb, Atlanta Legal Aid, Atlanta, Ga., for plaintiffs.

John W. Stokes, Jr., U. S. Atty., N. D. of Georgia (Stanley Baum and Julian Longley, Asst. U. S. Attys.), Atlanta, Ga., Paul Merlin, Chief of Litigation (Henry Eigles, Atty.), Social Security Div., Office of General Counsel, Dept. of HEW, Washington, D. C., for defendant.

Before MORGAN, Circuit Judge, and MOYE and FREEMAN, District Judges.

## OPINION

MOYE, District Judge:

This suit challenges the constitutionality of a provision of the Social Security Act, 42 U.S.C. § 403(a), which disqualifies certain illegitimate children from sharing equally with their half-siblings in survivors' benefits on the death of their wage-earner parent. The complaint, brought as a class action under Rule 23(a) and (b) (2) of the Federal Rules of Civil Procedure, seeks declaratory and injunctive relief against the continued enforcement of this provision of the law and recovery of social security benefits improperly withheld from the plaintiffs since July of 1971.

## PROCEDURAL QUESTIONS

Although plaintiffs alleged jurisdiction under a variety of federal statutes,[1] jurisdiction is proper under 28

---

1. Plaintiffs alleged jurisdiction under 5 U.S.C. §§ 702, 703 and 704; 28 U.S.C. §§ 1346(a) (2), 1361, and 2201; and 28 U.S.C. § 2282.

U.S.C. § 1346(a) (2) which confers original jurisdiction on the federal district courts over "[a]ny other [excepting certain tax cases] civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress . . . ." The Social Security Act, however, expressly prohibits judicial review[2] until after a final decision of the Secretary which must be made subsequent to a hearing at which the litigant is a party.[3] Thus, the question becomes not whether 28 U.S.C. confers jurisdiction, but whether jurisdiction is precluded by these sections of the Social Security Act.

Although 42 U.S.C. § 405 specifically precludes judicial review until the Secretary of HEW has issued a final decision, its purpose is only to delay judicial review until (1) findings of fact are made by the Secretary or (2) the Secretary has had an opportunity to correct a lower level administrative error. The case at bar presents neither of these problems since there are no factual issues in dispute and the Secretary is bound by 42 U.S.C. § 403(a) to deny these illegitimate children equal shares in the survivors' benefits of their deceased father. The only remaining issue is the constitutionality of § 403(a). That issue is not proper for agency review and is a question that has been especially reserved for the courts. Thus, exhaustion of administrative remedies not only would prove fruitless but also be inappropriate.

Faced with the same question concerning exhaustion of administrative remedies under § 405(h), Judge Wyzanski stated for a three-judge court in Gainville v. Richardson:

"Plaintiff Aims is not debarred from seeking judicial relief by the general doctrine that he must first exhaust his administrative remedies, nor by the more specific provisions of § 205(h) of the Social Security Act, 42 U.S.C. § 405(h). The general doctrine is inapplicable because here plaintiff claims that the statutory provision permitting deduction is unconstitutional. Where a plaintiff attacks the constitutionality of the statute under which an administrative agency acts, and attack does not turn upon a factual determination requiring administrative expertise, the doctrine of exhaustion of administrative remedies does not apply. Public Utilities Commission of Cal. v. United States, 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470; Oestereich v. Selective Service Board, 393 U.S. 233, 242, 89 S.Ct. 414, 21 L.Ed.2d 402."

Gainville v. Richardson, 319 F.Supp. 16, 18 (D.Mass.1970). The questions of jurisdiction and exhaustion of administrative remedies in the case at bar are exactly the same as those in *Gainville*. Accordingly, this Court concurs with Judge Wyzanski's excellently reasoned opinion in *Gainville* and holds that exhaustion of administrative remedies is inapplicable in the case at bar.[4]

---

2. 42 U.S.C. § 405(h) (*l*).

3. 42 U.S.C. § 405(g).

4. The Court notes with interest the recent Second Circuit decision of Davis v. Richardson, 342 F.Supp. 588 (D.C.Conn. 1972), a case strikingly similar to this instant case. [Decided May 8, 1972, by a three-judge panel and, as of this date, not yet appealed to the United States Supreme Court.] Judge Smith, speaking for the three-judge panel in the *Davis* opinion stated:
"We think, therefore, that it is an invidious discrimination, unrelated to the purpose of the law and to any legitimate legislative consideration governing the Social Security Act, to reduce the benefits of one group of 'children,' otherwise fully qualified under the Act, because their entitlement rests on one of three possible statutory grounds. Their total exclusion from benefits (or receipt of varying amounts depending on the number of children in the family otherwise) is a distortion of the policies behind the Act and is not related to any of the state interests that the defendants put forward." Memorandum of Decision, p. 593, filed May 8, 1972.

## THE MERITS

■ The essential facts appear to be undisputed. Under the applicable provisions of the Social Security Act, the minor Morris plaintiffs have been deprived of social security survivor benefits from the account of their deceased father because they are his illegitimate children. Under the Social Security Act these illegitimate children *qualify* for social security survivor benefits [5] but they are prohibited from sharing the benefits equally with the decedent's legitimate children.[6] On December 17, 1967, their father, Solomon Rogers, executed an acknowledgment of paternity and declared he was paying $50 per month toward support plus clothing expenses for the minor plaintiffs in this suit. Solomon Rogers died in March, 1971. Subsequent to his death, Carrie Morris, as mother of his illegitimate children who are plaintiffs in this suit, filed for survivors' benefits under the Social Security Act. The plaintiffs received survivors' benefits from Solomon Rogers's account until July of 1971, when the district office of the Social Security Administration informed them that the *legitimate* children of Solomon Rogers had applied for survivors' benefits and that plaintiffs were now eligible for *residual* benefits which would be paid only after satisfaction of the legitimate children's claim.

The Act gives them only *residual* benefits as follows. The statute sets a "family maximum" for survivors' benefits, the amount of which depends upon the wage earner's work history.[7] Within that "family maximum," each eligible survivor may receive an "individual maximum." But if the total of the individual maxima would exceed the family maximum, each survivor gets a pro rata share.[8] However, illegitimate children who are eligible for the benefits solely as a result of § 416(h) (3) are not entitled to pro rata sharing. Even though they are certified eligible, they are deemed not to exist for purposes of sharing in survivors' benefits on the first round of calculations pursuant to § 403(a). Ignoring these illegitimate children, every other beneficiary on the account receives his individual maximum, or, if the family maximum would be exceeded, his pro rata share. Then, and only then, if there are any benefits left in the account, may these illegitimate children split the residue.[9]

The Social Security Act sections which form the background for plaintiffs' claim of unconstitutionality are the sections of the Act which define a "child." Congress has established three tests for determining whether an individual is a "child" of the wage-earner. Under 42 U.S.C. § 416(h) (2) (A), an individual is deemed a "child" for social security purposes if he had the right as a child to inherit the worker's intestate personal property under applicable state laws. Section 416(h) (2) (B) confers the status of "child" on individuals whose parents went through a marriage ceremony which proved to be invalid as a result of a procedural defect or legal impediment connected with a prior marriage. The third method, § 416(h) (3), which Congress added in 1965, considerably broadened the definition of "child"

---

5. 42 U.S.C. § 416(h) (3).

6. 42 U.S.C. § 403(a).

7. 42 U.S.C. § 416(a).

8. 42 U.S.C. § 403(a) (3).

9. 42 U.S.C. § 403(a) provides in part:
   "Whenever a reduction is made under this subsection in the total of monthly benefits to which individuals are entitled for any month on the basis of the wages and self-employment income of an insured individual, each such benefit other than the old-age or disability insurance benefit shall be proportionately decreased; *except that if such total of benefits for such month includes any benefit or benefits* under section 402(d) of this title *which are payable solely by reason of section 416(h) (3)* of this title, *the reduction shall be first applied to reduce* (proportionately where there is more than one benefit so payable) the *benefits so payable* (but not below zero)." [emphasis added]

by deeming an individual to be a "child" of the wage-earner if (1) the deceased wage-earner had acknowledged paternity of the applicant in writing; or (2) a court had decreed the wage-earner to be the father of the applicant; or (3) a court had ordered the wage-earner to contribute to the applicant's support; or (4) paternity was established by satisfactory evidence and the father was either living with the child or contributing to the child's support. Section 416(h) (3) expressed the intent of Congress [10] to broaden the definition of "child" so as to encompass almost all dependent children whose fathers were known. The irony of § 403(a) is that illegitimate children who qualify for benefits under the first two sections of the Act [11] are allowed to *share equally* with the wage earner's legitimate children while the illegitimate children qualifying solely under § 416(h) (3) are deemed by § 403(a) as less-deserving and get only the residue.

The following example from the facts of the case at bar paints a vivid picture of the effects of § 403(a). Under the statutory scheme, plaintiff Morris, an illegitimate child, receives only $21.60 per month while her father's legitimate children each receive $142.20 per month. If legitimate and illegitimate children shared on a pro rata basis each child would receive $74.80. Meanwhile, plaintiff Gay, an illegitimate child of another wage-earner, receives zero benefits from her father's account because the "residual" benefits have been eaten up by her four legitimate half-siblings and their mother. Absent the alleged discriminatory exclusion, her recalculated pro rata share would be $31 per month. Thus, § 403(a) renders certain illegitimate beneficiaries either totally or partially ineligible for social security survivors' benefits.

Plaintiffs claim the limited benefits available under the Act should be apportioned equally among legitimate and illegitimate children of the deceased wage earner and that denial of equal participation in the benefits is unconstitutionally discriminatory. This Court agrees.

Section 203(a) of the Social Security Act, 42 U.S.C. § 403(a), unconstitutionally discriminates against illegitimate children eligible solely under 42 U. S.C. § 416(h) (3) vis-a-vis other illegitimate children granted an equal share of survivors' benefits under other provision of the Act, and vis-a-vis legitimate children granted survivors' benefits under the Act. Both of these other classes receive greater benefits through the operation of § 403(a), yet, there is no rational justification for the difference in treatment.

---

10. When § 416(h) (3) was added in 1965 to broaden the concept of eligible children, the Senate Finance Committee sponsoring the legislation stated explicitly that state intestacy laws are irrelevant to the purposes of the Social Security Act:

"The Committee believes that in a national program that is intended to pay benefits to replace the support lost by a child when his father retires, dies, or becomes disabled, whether a child gets benefits should not depend on whether he can inherit his father's intestate personal property under the laws of the State in which his father happens to live. The committee has therefore included in the bill a provision under which benefits would be paid to a child on the earnings record of his father, even though the child cannot inherit the father's intestate

property, if the father had acknowledged the child in writing, had been ordered by a court to contribute to the child's support, had been judicially decreed to be the child's father, or is shown by other evidence satisfactory to the Secretary of Health, Education, and Welfare to be the child's father and was living with or contributing to the support of the child."

S.Rep. 404, 89th Congress, 2nd Session (1965). The import of the Committee's statement was that the only two genuinely rational bases for limiting eligibility for survivors' benefits were *dependency* upon the decedent wage-earner and *proof of paternity.* These limitations were written into § 416(h) (3) to broaden the base of eligibility consistent with the purposes of the Act.

11. 42 U.S.C. § 416(h) (2) (A) and (B).

Plaintiffs' constitutional challenge of § 403(a) runs headon into Parker v. Secretary of Dept. of Health, Ed. & Welf., 453 F.2d 850 (5th Cir. 1972), in which the Fifth Circuit Court of Appeals held § 403(a) not unconstitutionally discriminatory because it could be justified "on the basis of Congress giving precedence or priority to the legitimate children in the interest of strengthening and preserving family ties and as a part of the total scheme of the Act." [*Id.* at 851.] In affirming the constitutionality of § 403(a), the Court of Appeals based its decision on Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), which at that time was the United States Supreme Court's most recent opinion concerning illegitimate children's rights. Since the date of the *Labine* decision, however, the Supreme Court has rendered another opinion which more explicitly elucidates the Supreme Court's position on the rights of illegitimate children; Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Accordingly, this Court must follow the *Weber* decision inasmuch as it is directly applicable to the instant case.

Appellants in *Weber* challenged a provision of Louisiana workman's compensation statute which had precisely the same effect as § 403(a): it consigned illegitimate children of a wage-earner to a residual share of death benefits, so that they received nothing until each legitimate child had received his individual maximum from the wage-earner's limited account. As a result of the Louisiana statute, the Weber children, like Michelle Gay in the instant action, received no benefits at all.

The United States Supreme Court in *Weber* held there was no rational basis for Louisiana's discrimination between legitimate and illegitimate children under the state workman's compensation statute so that this distinction violated traditional equal protection standards.[12] In so doing, the Court relied heavily on Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), which invalidated a state statutory provision barring illegitimates' recovery for the wrongful death of their mother, and distinguished Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), which upheld the constitutionality of Louisiana's discrimination against illegitimates in rights of inheritance under the state's intestacy laws. Since the effect of the statutes in *Weber* and the instant case are virtually identical, *Weber* charts the proper course between *Levy* and *Labine* and constitutes the basis of this Court's decision to hold § 403(a) unconstitutional.

In *Weber* the Court noted the strong similarity between the purposes of the statute in *Levy* and the income-substitute plans such as workman's compensation and social security. 406 U.S. 164, 92 S.Ct. 1400. The crucial goal in *Levy*, *Weber* and the case at bar is the provision of support for dependent children. As *Weber* noted, comparing the illegitimate claimant to her legitimate half-siblings: "she is a *dependent child,* and as such is entitled to rights granted other *dependent children.*" *Id.* at 170, 92 S.Ct. at 1404. [emphasis in the original] *Weber* held that every dependent child regardless of the marital state of his father or his domiciliary state's intestacy laws, is entitled by the equal protection clause to his proportionate share of survivor's benefits from his father's account.

The *Weber* court explicitly distinguished the *Labine* decision because it "reflected, in major part, the traditional deference to a state's prerogative to regulate the disposition at death of property within its borders." *Id.* at 170, 92 S.Ct. at 1404. The *Weber* court also expressly rejected "legitimate family relationships" and the "regulation and pro-

---

12. The Court hinted that the stricter compelling state interest test might apply. See its reference to "fundamental personal rights," at 179, 92 S.Ct. at 1408; and its concluding statement that "the classification is justified by no legitimate state interest, compelling or otherwise." 406 U.S. 176, 92 S.Ct. 1407 (1972).

tection of the family unit" as bases for rational justification of the statute:

"We do not question the importance of that interest [legitimate family relationships]; What we do question is how the challenged statute will promote it. As was said in *Glona:*

". . . we see no possible rational basis . . . for assuming that if the natural mother is allowed recovery for the wrongful death of her illegitimate child, the cause of illegitimacy will be served. It would, indeed, be farfetched to assume that women have illegitimate children so that they can be compensated in damages for their death." Glona v. American Guarantee and Liability Insurance Co., *supra,* [391 U.S. 73] p. 75 [88 S.Ct. 1515, p. 1516, 20 L.Ed.2d 441].

Nor can it be thought here that persons will shun illicit relations because the offspring may not one day reap the benefits of workmen's compensation."

406 U.S. 173, 92 S.Ct. 1405. The same reasoning applies in the instant case. Denial of social security survivors' benefits to these illegitimate children will not deter persons from entering into illicit relations. Therefore, promotion of legitimate family relationships by condemnation of illegitimate relationships and their progeny is not an acceptable rational justification for the statute, and it must be declared unconstitutional:

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffec-

tual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where —as in this case—the classification is justified by no legitimate state interest, compelling or otherwise." [footnotes omitted]

406 U.S. 175, 92 S.Ct. 1406.

*Weber* and *Levy* cannot be distinguished from the case at bar on the grounds that the former cases involved state statutes and the present case a federal statute, thereby escaping the requirements of equal protection embodied in the Fourteenth Amendment. All standards of equal protection applicable to the states through the Fourteenth Amendment are also applicable to the federal government through the Fifth Amendment. To rule otherwise would be totally illogical if not hypocritical. The Due Process Clause of the Fifth Amendment prohibits the federal government from creating statutes which establish arbitrary discrimination having no rational basis in legitimate governmental purposes. Although the equal protection guarantee is not specific, it has been implied into the Due Process Clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Flemming v. Nester, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968). As the Court said in Bolling v. Sharpe, *supra,* "discrimination may be so unjustifiable as to be violative of due process." *Id.* at 499, 74 S.Ct. at 694. Therefore, in the instant case, where the discrimination bears no rational connection to the purposes of the Social Security Act it must be declared as unconstitutionally violative of due process.

The Court finds that class-action relief is appropriate and accordingly de-

fines the class as all children who are eligible for social security survivors' benefits solely by reason of 42 U.S.C. § 416(h) (3).

In summation, this Court declares 42 U.S.C. § 403(a) unconstitutionally discriminatory in violation of the Due Process Clause of the Fifth Amendment and grants plaintiffs' requests for declarative and injunctive relief.[13] Specifically, the Secretary of Health, Education and Welfare is enjoined from enforcing this section and is ordered to pay plaintiffs the funds wrongfully withheld from them due to the hereinbefore described unconstitutional application of § 403(a).

So ordered.

---

13. Plaintiffs also requested this Court to enjoin the Secretary from attempting to recoup benefits improperly paid to them before being terminated. Since the pleadings indicate that the Secretary may have already abandoned efforts to recoup, this Court will defer judgment on the issue until positive need for such relief is shown.