Emanuel MAZER et al.

v.

Caspar W. WEINBERGER, Secretary of the Department of Health, Education and Welfare and Robert M. Ball, Commissioner of the Social Security Administration.

Civ. A. No. 73–616.

United States District Court,
E. D. Pennsylvania.

Nov. 21, 1974.

Joseph D..Shein, Ronald A. Anderson, Philadelphia, Pa., for plaintiffs.

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

Before GARTH, Circuit Judge, and GORBEY and BECHTLE, District Judges.

## OPINION

BECHTLE, District Judge.

The four named plaintiffs (Herman Notgernic, Albert F. Ceres, Jr., Emanuel Mazer and Harry Seder) are individuals who have attained age 65 and are entitled to receive full monthly old-age retirement insurance benefit payments under the Social Security Act, 42 U.S. C. § 301 et seq.[1] They brought this action on March 20, 1973, on behalf of themselves and those individuals between the ages of 65 and 72 who, although being entitled to monthly old-age retirement benefits payments under the Act, have been denied some or all payments by the Secretary of Health, Education and Welfare ("HEW") because their wages or self-employment income were in excess of a certain amount. The earnings limitation is presently set at $2,400 in a calendar year or $200 in each month of that year. The payments are withheld or suspended pursuant to § 203(b) of the Act, 42 U.S.C. § 403(b).[2] The Secretary does not suspend or make any deductions from the benefits of qualified individuals after they attain age 72 or because they have income from sources other than wages or self-employment in excess of the amount set by the Act.

The primary purpose of their action is to have § 203(b) and related subsections of the Act declared unconstitutional, to enjoin the Secretary from further suspending monthly benefit payments pursuant to those subsections, and to recover the suspended payments. Another purpose is to recapture the Federal Insurance Contribution Act ("FICA") taxes deducted from their wages or earnings pursuant to 26 U.S.C. §§ 3101–3102 while they were working for wages or earning income from self-employment after becoming entitled to receive monthly benefit payments.

Plaintiffs claim that the suspensions in payments (1) violate their "civil right to work guaranteed by the Constitution"; (2) discriminate invidiously against them without any rational basis because payments are not similarly suspended for those persons eligible to receive them and who (a) have attained age 72 or (b) have income, other than from wages or self-employment, in excess of $2,400 in a calendar year; and,

---

1. An individual may be "entitled" to benefits even though the benefits are not payable.

2. This subsection provides, in pertinent part: "(b) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled, and from any payment or payments to which any other persons are entitled on the basis of such individual's wages and self-employment income, until the total of such deductions equals—
 (1) such individual's benefit or benefits under section 402 of this title for any month, and

(2) if such individual was entitled to old-age insurance benefits under section 402 (a) of this title for such month, the benefit or benefits of all other persons for such month under section 402 of this title based on such individual's wages and self-employment income,

if for such month he is charged with excess earnings, under the provisions of subsection (f) of this section, equal to the total of benefits referred to in clauses (1) and (2). If the excess earnings so charged are less than such total of benefits, such deductions with respect to such month shall be equal only to the amount of such excess earnings . . . ."

(3) take property from them without due process of law. Jurisdiction of the District Court is invoked under a number of statutes.

A statutory Three-Judge Court was convened pursuant to 28 U.S.C. §§ 2282–2284(1), since plaintiffs seek to restrain the enforcement of an Act of Congress for repugnance to the Constitution.

The Secretary of HEW has filed a motion, now before us for decision, to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief may be granted, or, in the alternative, for summary judgment in his favor.[3]

## I. JURISDICTION

The asserted grounds for lack of jurisdiction are, first, that plaintiffs have failed to exhaust their statutory administrative remedies under § 205(g) of the Act, 42 U.S.C. § 405(g); and, second, the claim of each plaintiff does not meet the jurisdictional amount of $10,000 under 28 U.S.C. § 1331(a).

■ Three of the plaintiffs, Ceres, Mazer and Seder, did not contest the suspensions of their monthly old-age retirement benefits by recourse to any of the remedies allowed by § 205(g). Notgernic need not have done so for his benefits were not suspended. Since this case does not involve an appeal from a final decision of the Secretary, plaintiffs may not validly invoke the jurisdiction of this Court under § 205(g). Section 205(g), as the embodiment of the exhaustion of remedies requirement,

is inapplicable here.[4] Gainville v. Richardson, 319 F.Supp. 16, 18 (D.Mass. 1970). Plaintiffs attack the constitutionality of provisions of the Act. However, the Secretary is powerless to evaluate and deal with such a challenge. See, Oestereich v. Selective Service Bd., 393 U.S. 233, 242, 89 S.Ct. 414, 21 L. Ed.2d 402 (1968); Williams v. Richardson, 347 F.Supp. 544, 548 (W.D.N.C. 1972).

■ The claims of each plaintiff regarding the unconstitutionality of § 205 (b) and related subsections of the Act raise issues that arise under the Constitution,[5] and not the Act. Johnson v. Robison, 415 U.S. 361, 367, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974). For a resolution of a constitutional problem, a proper plaintiff may bring an independent civil action in a Federal District Court without having exhausted his statutory administrative remedies. If the question posed is nonfrivolous, as it is here, the District Court would have jurisdiction under 28 U.S.C. § 1331(a), if the amount in controversy, exclusive of interest and cost, exceeds the sum or the value of $10,000. To avoid the jurisdictional amount hurdle, plaintiffs insist that constitutional question involvement in a case does not require a jurisdictional amount, even under 28 U.S.C. § 1331(a). In the alternative, they argue that even if the jurisdictional amount requirement must be met under that section, this Court would have jurisdiction under one or more of a number of statutes[6] or by reason of the doctrine of pendent jurisdiction. We find it necessary to discuss only § 1331

3. The parties conceded at oral argument that there are no genuine issues of material fact in the instant case.

4. We take note of the recent three-judge decision Kohr v. Weinberger, 378 F.Supp. 1299 (E.D.Pa.1974), pertaining to challenge to the Social Security Act for allegedly unconstitutional sex discrimination against male recipients. Contrary to our holding here, that case recognized jurisdiction under § 205(g). We are not obliged to follow *Kohr's* jurisdictional holding, nor are we persuaded by *Kohr* that jurisdiction in actions challenging

the constitutionality of the Social Security Act can be predicated on § 205(g).

5. "The interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause." Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Quoted with approval in Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed. 2d 231 (1971).

6. The statutes relied upon are the following: 28 U.S.C. § 1343(3) (jurisdictional counter-

and two of the additional jurisdictional statutes cited by the plaintiffs, 28 U.S.C. §§ 1340 and 1346. We find the doctrine of pendent jurisdiction to be inapposite. Accordingly, we turn first to the problem of ascertaining whether the jurisdictional amount is met in this case.

■ Notgernic will be 72 in January of 1980. He is retired and at the time of the filing of the complaint in March, 1973, he was receiving his monthly benefits. He has given no indication that he will return to work for wages in excess of $2,400 per year. Whatever the value of his benefits is between the filing of the complaint and his attaining age 72, they are not in controversy here. Ceres is over 72 years of age and his future benefits are no longer subject to the possibility of being suspended for excess earnings. He had lost a total of $4,195.50 in benefits prior to his attaining age 72 in October, 1969. The amounts of $6,145.80 and $844.80 have been withheld from Mazer and Seder, respectively, up to the date of the filing of the complaint in March of 1973. None of these amounts reach the jurisdictional level. The claim of each plaintiff is separate and distinct. They may not be aggregated to reach the requisite jurisdictional level. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 322, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939). The claim of each plaintiff must satisfy the jurisdictional amount or his claim must be dismissed.

Mazer will attain age 72 in January of 1978, while Seder will reach that age in December of 1979. If these two individuals continue to work for wages or have earnings from self-employment, or both, annually in excess of the maximum set by the Secretary, Mazer stands to lose at least $21,113 in total benefits while Seder will have a minimum of $17,740 withheld from him. Each of these amounts are in excess of $10,000. Therefore, we have two plaintiffs over whose claims the District Court has jurisdiction under 28 U.S.C. § 1331 (a).[7] Under this theory of jurisdiction, the claims of Notgernic and Ceres will have to be dismissed. Clark v. Paul Gray, Inc., *supra.*

■ We address ourselves to the question of the jurisdiction of the District Court to entertain the claims of Mazer and Seder, as set forth in paragraph 16 of the complaint, that the suspension of payments further deprives them "of their property without due process of law by failing when benefits are so reduced or forfeited to return any part of the Social Security taxes which the employees and employers were compelled to pay in prior years." A claim for refund of taxes allegedly erroneously paid is not such a claim as could be properly presented to the Secretary under the Act. The Secretary has no authority over the collection of taxes, even though it is within his province to make a ruling that a party is in a status—employer or employee, for example—as would render him liable for them. Collection of FICA taxes is the responsibility of the Internal

part to Civil Rights Act); 28 U.S.C. § 1337 (under act regulating commerce or protecting commerce against restraint and monopolies); 28 U.S.C. § 1340 (for recovery of taxes paid); 28 U.S.C. § 1346(a)(2) (Tucker Act); 28 U.S.C. § 1361 (mandamus section); and, 5 U.S.C. § 701 et seq. (Administrative Procedure Act).

7. See, Hiss v. Hampton, 338 F.Supp. 1141 (D.D.C.1972). Though Mazer, as of the date of the filing of the complaint in March of

1973, had only had benefits suspended in the amount of $6,145.80, from that date to the date of this decision, additional sums in the amount of $4,989.40 have been suspended— meaning an aggregate sum of $11,135.20 has been suspended to date. Similarly, in the case of Seder, the suspensions up to the date of the complaint were $844.80 and from that date until the present an additional $4,012.80 have been suspended making a current aggregate suspended sum of $4,857.60.

Revenue Service ("IRS"). Claims for such refunds must be brought by a separate action, jurisdiction for which is to be found under 28 U.S.C. § 1340, regarding Internal Revenue matters, or 28 U.S.C. § 1346(a), when the United States is a defendant, to recover taxes paid. We may not treat this case as such an action, for neither the United States nor an appropriate IRS officer has been named as a party defendant. Moreover, when, as here, injunctive relief is sought, the District Court has no jurisdiction under 28 U.S.C. § 1346(a). Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973).

## II. MOTION TO DISMISS

One of the grounds for the motion to dismiss the complaint as not stating a claim upon which relief may be granted is similar to the one made by the Secretary regarding jurisdiction; *i. e.,* the plaintiffs have not exhausted their administrative remedies before seeking court help. For the reasons stated in deciding the jurisdictional question, they, under the circumstances of this case, need not have exhausted those remedies before seeking relief here. The motion will be denied on this ground.

## III. CLASS ACTION DETERMINATION

Of no little importance to Mazer and Seder is their motion, emphatically opposed by the Secretary, for a determination under Fed.R.Civ.P. 23(c) whether this action may be maintained as a class action. These two plaintiffs vigorously proclaim and emphasize the superiority of the class action device as the only means by which a final, nationwide decision can be made binding on all persons concerned. They claim to represent all individuals between the ages of 65 and 72 years who are entitled to receive old-age monthly retirement benefits but whose benefits have been or are now being reduced or suspended by the Secretary because of their excess earnings.

A large segment of the estimated 2.5 million individuals entitled to retirement benefits under the Act would prefer to continue working for wages or earn income from self-employment, beyond the limit set by the Act, knowing that their benefits will not be suspended or reduced if they do so. Though they are vitally interested in the outcome of a case of this kind, they, of course, are far too numerous to be joined in this action. A predominant reason why Mazer and Seder desire to maintain this action as a class action is so they may send a form of notice to each member of the proposed class. They insist that due process of law require that some kind of notice be given and point out that subdivision (c)(2) of Rule 23 mandates that the best notice practicable under the circumstances be given to all members who can be identified through reasonable efforts in a class action maintained under subdivision (b)(3) of the rule. Mazer and Seder have submitted a proposed form of notice to be sent to each member of the suggested class. The form includes the following explanation and instructions:

"You can join in this class action by contributing the sum of $10.00 to meet the costs of the law suit. Send your check to the above address made payable to S. A. M. (Save American Manpower), a Pennsylvania foundation.

"Any excess funds received by S. A. M. will be directed towards finding better ways of utilizing manpower in the United States without regard to age, race, sex or creed. In addition, excess funds will be used to find ways and means to improve the social security system. If you do not wish to be represented by plaintiffs, or if you wish to be represented but cannot or do not desire to make a contribution, so inform the attorneys in writing. No additional payment will be required of you in addition to your voluntary $10.00 contribution.

"This notice is being mailed to you pursuant to an Order of the Constitutional Court wherein this action is pending." [8]

 In an action where the statute under which the jurisdiction of the Court is invoked requires that the value of the matter in controversy be in excess of a certain amount, the proponents of a motion for a class action must first establish that the claim of each class member independently satisfies the requirements as to jurisdictional amount. See, Zahn v. International Paper Co., *supra*, where jurisdiction was founded on diversity of citizenship and the amount in controversy. Also see, Rucker v. Willis, 358 F.Supp. 425, 428 (E.D.N.C.1973); aff'd on other grounds, 484 F.2d 158 (4th Cir. 1973); Sigel v. General Development Corporation, 59 F.R.D. 577, 582 (M.D.Fla.1973). Plaintiffs claim to represent a class in which the claim of each member is several and is separate and distinct from that of the other members.[9] Mazer and Seder do meet the burden cast upon them in this unique Federal claim situation and the action can proceed as a class action because the elements of subdivision (b)(2) of Rule 23 are present.[10] The Secretary "has acted or refused to act on grounds generally applicable to the class" and Mazer and Seder are "seeking final injunctive relief or corresponding declaratory relief with respect to the class as a whole" which are appropriate to determine the propriety of the Secretary's action toward the class. Under the rule, notice to members of a subdivision (b)(2)

class action is not made mandatory as it is when the action proceeds as a subdivision (b)(3) class action. But see, Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2nd Cir. 1968), holding that notice is required as a matter of due process in all representative actions. Nevertheless, the Court may direct that notice be given to members in a (b)(2) class action by virtue of subdivision (d)(2) of the rule. However, despite this discretionary power, it would not be appropriate that notice be given in the instant case. This Court is confident, as was the three-judge court in the case of Francis v. Davidson, 340 F.Supp. 351, 361–362 (D.Md.1972), aff'd without opinion, 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168, that were we to rule in favor of Mazer and Seder on the merits, the Secretary would notify all the beneficiaries of their right to receive monthly benefits. This case should not be permitted to proceed as a subdivision (b)(3) class action, even though it is of the type which is economically suitable for enabling numerous persons who have small claims to recover them in a representative action. In addition to the fact that benefit losses are not recoverable in this action, notice to each class member that the Court would exclude him from the class if he or she so requests would be contrary to the very purpose of a class action maintainable under subdivision (b)(2). Mungin v. Florida East Coast Railway Company, 318 F.Supp. 720, 730–731 (M.D.Fla. 1970), aff'd per curiam, 441 F.2d 728 (5th Cir. 1971), cert. denied, 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175. Also

8. Plaintiffs set forth in their brief that the present officers of the foundation S.A.M. are plaintiffs and their counsel, that any class action funds in excess of class action costs will be directed exclusively to much needed non-political research in the field of manpower use and reform of the social security system, and that it will be conducted by the foundation.

9. For a court to determine and order an action to proceed as a class action, Fed.R. Civ.P. 23(a) requires all of its four sub-parts

to be satisfied. Judge Garth differs from the majority and believes that the plaintiffs cannot meet the requisites of 23(a)(3) and (4) and, hence, a class action cannot be maintained.

10. If Judge Garth did find that plaintiffs satisfied all the prerequisites of Rule 23(a), he would join with the majority in regard to the plaintiffs' action as one to be conducted under Rule 23(b)(2), a form of class action not requiring notice.

see, Williams v. Local No. 19, Sheet Metal Wkrs. Int. Ass'n, 59 F.R.D. 49, 54–55 (E.D.Pa.1973); Harper v. Mayor and City Council of Baltimore, 359 F. Supp. 1187, 1192 n. 1 (D.Md.1973); Van Gemert v. Boeing Company, 259 F.Supp. 125, 130–131 (S.D.N.Y.1966); 7A Wright & Miller, Fed.Pract. and Proc. § 1777.

## IV. MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The other asserted ground for dismissing the complaint or for summary judgment is that the suspensions or withholding of benefits is constitutional. The Supreme Court has warned against dismissing a complaint raising constitutional questions at the pleading stage and instead to ascertain the facts before ruling on the motion. Here, the relevant material facts are not in dispute. Only legal questions remain to be answered.

The test for an individual's right to receive old-age retirement insurance benefits under the Act prior to his attaining age 72 is a fully insured status, attainment of a designated age, retirement or the absence of excess earnings, and the filing of an application. Plaintiffs' first contention is that the threat or the enforcement of payment suspensions for excess earnings, which they refer to as "work penalties," violate their "civil right to work guaranteed by the Constitution." This contention, we think, is just another way of saying that Congress is powerless, in the face of the Due Process Clause of the Fifth Amendment, to suspend or reduce the payment of monthly old-age benefits on account of the beneficiary's excess wages or self-employment income.

 At the outset, we reject plaintiffs' suggestion that the Court should not, in resolving the issues presented, be influenced by any additional expense which the removal of the "work penalties" will entail. They say there is no underlying question of limited resources with which to pay monthly benefits under the Act as was the case in Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), where the Court recognized in plaintiffs' words, "the grim economic fact that Texas had only a limited amount of money with which to make welfare payments." They view the trust fund from FICA taxes by which the Social Security program operates as inexhaustible. They fail to recognize that if the requirement for suspension of benefits were eliminated, that unless the program is funded by levies in addition to FICA taxes, the amount of the monthly benefits would be decreased or the FICA taxes increased in order to maintain the benefits at their present level.[11] What the Court said about the State of California in Geduldig v. Aiello et al., 417 U.S. 484, 94 S.Ct. 2485–2486 (1974), applies to Congress. There, the Court stated: "The State has a legitimate interest in maintaining the self-supporting nature of its insurance program. Similarly, it has an interest in distributing the available resources in such a way as to keep benefit payments at an adequate level for disabilities that are covered, rather than to cover all disabilities inadequately. Finally, California has a legitimate concern in maintaining the contribution rate at a level that will not unduly burden participating employees, particularly low-income employees who may be most in need of the disability insurance." 417 U.S. 496, 94 S.Ct. at 2491.

 Work affecting interstate commerce may be regulated and the proceeds from that labor taxed by Congress. This power is not absolute. Nevertheless, the fact that the right to earn a livelihood and to continue in

---

11. The Deputy Chief Actuary for the Social Security Administration estimates that if the excess earnings test were eliminated from the Act for beneficiaries in the 65 to 72 age range, additional benefit payments for the first full calendar year of 1975 would be about $2.1 billion. If the test were eliminated for all beneficiaries, including those under age 65, his current estimate is the additional benefits for the same period would be roughly $4 billion. (Affidavit of Lawrence Alpern.)

employment unmolested by the enforcement of a void enactment is recognized by the courts [12] does not solve plaintiffs' problem here. As stated by the Supreme Court in Richardson v. Belcher, 404 U.S. 78, 80, 92 S.Ct. 254, 256–257, 30 L.Ed.2d 231 (1971):

"In our last consideration of a challenge to the constitutionality of a classification created under the Social Security Act, we held that 'a person covered by the Act has not such a right in benefit payments as would make every defeasance of "accrued" interests violative of the Due Process Clause of the Fifth Amendment.' Flemming v. Nestor, 363 U.S. 603, 611 [80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435]. The fact that social security benefits are financed in part by taxes on an employee's wages does not in itself limit the power of Congress to fix the levels of benefits under the Act *or the conditions upon which they may be paid.* Nor does an expectation of public benefits confer a contractual right to receive the expected amounts . . ." (Emphasis added.)

The Act does not prohibit Mazer or Seder from working. As a matter of fact, both of them are currently working. It is true the Act may operate to deter from working some individuals who reach retirement age and are otherwise qualified to receive monthly benefits. The closer the amount earned in a single year approximates the limit set by Congress, the greater the inducement not to work. See the discussion in the case of Steward Machine Co. v. Davis, 301 U.S. 548, 589–590, 57 S.Ct. 883, 81 L. Ed. 1279 (1937). Plaintiffs' quarrel regarding this constitutional objection is not with the earnings limitation but, rather, with the amount of such limitation, an argument more properly addressed to the legislature than to us.

Plaintiffs also assert that the suspensions discriminate against them in favor of older people without any rational basis, because payments are not similarly reduced or suspended for those persons entitled to receive them and who have attained age 72. The Act obviously discriminates between persons under 72 years of age and persons 72 years of age and older. Plaintiffs are not really objecting to the provision of the Act which eliminates benefit suspensions at age 72. One of the original plaintiffs, Ceres, whose claim must be dismissed, has indeed attained that age, was receiving full benefits at the time of the filing of the complaint and still is. There is a likelihood that the other plaintiffs will reach that age. Here again, what plaintiffs are actually claiming is that Congress has no power to suspend or withhold benefits on the ground of excess earnings or self-employment income once an individual becomes entitled to old-age benefits.

The Act does not put a potential beneficiary and the Government in a contractual status similar to that of the parties to an annuity contract, where the annuitant begins to receive benefits upon reaching a stated age. At page 611 of 363 U.S., at page 1373 of 80 S.Ct., the *Nestor* case, the Supreme Court said:

". . . when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

Thus, a statutory classification does not violate the Due Process Clause if it is free from invidious discrimination and is rationally based. See, Richardson v. Belcher, *supra*, 404 U.S. at 81, 92 S.Ct. 254. The Act's classification as to age is not an invidious one on its face. There has been no showing of invidious discrimination in its applica-

12. See, Truax v. Raich, 239 U.S. 33, 38, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

tion. Since the Act is one "in the area of social welfare," the Supreme Court has decreed the "rational justification" standard is to be applied, and not the test, which plaintiffs would have us use, of "strict scrutiny." Nor is the Act's classification as to age without rational justification. "If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment." Richardson v. Belcher, *supra*, 404 U.S. at 84, 92 S.Ct. at 258.

■ The Act has some resemblance to a pension plan. One of its purposes is to pay benefits to partially replace lost earnings in less productive years which usually result from the increase in age and, thus, protect beneficiaries from some of the hardships of existence. United States v. Silk, 331 U.S. 704, 711, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). Another is to induce workers to retire so as to remove them from the labor market. Ludeking v. Finch, 421 F.2d 499, 502–503 (8th Cir. 1970). There is nothing irrational *per se* with granting an advantage to persons reaching an advanced age which is not conferred upon younger people. As pointed out in Gainville v. Richardson, *supra*, 319 F. Supp. at 20: ". . . While it is not always true, it is generally true that persons over 72 have been contributing for a longer time than persons under 72, and are likely to have fewer years of retirement ahead of them. See Sen. Rept. No. 1987, 83rd Cong., 2nd Sess., p. 18." We can add that, in comparison to those individuals in the age bracket of 65 to 72, the probability of persons over 72 being able to earn is significantly less. This would be true even if all entitled individuals were to reach 72. Theoretically, all such individuals will reach that age and, thus, the benefit bestowed to that class will be conferred upon all.

In a similar vein, plaintiffs say § 203(b) and related subsections are unconstitutional because the suspensions in benefits invidiously discriminate against them on the basis of wealth, since payments are not similarly reduced or suspended for persons over 72 years of age who are entitled to receive them although their income, other than from wages or self-employment, is in excess of $2,400 annually.[12] Regarding this assertion, Chief Judge Charles E. Wyzanski, Jr., stated in Gainville v. Richardson, *supra* at 19:

"Moreover, Congress has a rational basis for not providing for deductions for unearned income. First, unearned income has little relevance to the central purpose of a retirement benefit system intended to compensate for loss of earned income. Second, unearned income plays no part in the taxation or other aspects of the old age benefit system. Third, to make a deduction would create disincentives to saving. As Secretary Cohen, in the letter previously quoted, noted 'If benefits were withheld because the person had income from savings, investments, a private pension plan or the like, the program would discourage people from saving in their productive years to have a more comfortable life in retirement than social security benefits alone can make possible.' Fourth, if deductions were to be made for unearned income a new set of problems of administration, valuation, computation and reporting would be presented.

"But plaintiffs seem to contend that even if Congress has a rational basis for not making deductions from benefits on account of unearned income it has no rational basis for making deductions of earned income when it does not simultaneously make deductions for unearned income. The short and adequate answer is the one already given: that it is rational to have a retirement benefit system in which

---

12. The record does not show whether or not Mazer and Seder, after they became entitled to benefits, had unearned income in excess of $2,400 annually.

benefits are related to failure to receive a particular type of earned income."

No matter what the wealth of an individual entitled to receive benefits, or the amount of his unearned income, his benefits are suspended if he has excess earnings just as the benefits of the poorest individual would be.

 To cover any specific grounds they may have failed to assert, plaintiffs maintain that the application of the "work penalties" of the Act takes property from them without due process of law. As mentioned earlier, the plaintiffs' rights to benefits under the Act may be restricted by legitimate conditions. The Act makes the payment of monthly old-age benefits conditioned on the fact the beneficiary is not earning excess income. We have herein held this to be valid. Consequently, the withholding of benefits while the beneficiary is in such status does not amount to the taking of his property without due process of law. Since the suspensions for excess earnings are valid, the proper forum for plaintiffs to air their dissatisfaction with them is Congress rather than the courts.[13]

In their brief (p. 112), plaintiffs say, without argument or supporting authority, the following:

". . . Something of value cannot be destroyed by legislative command. Something of value can only be taken away after notice and a hearing which determines that in the individual case forfeiture is justified. Things of importance in the daily life of a person cannot be taken from him or from the class to which he belongs without a careful examination into the merits of such action, without regard to whether the actor be a creditor, a landlord, an administrative agent, or the Congress of the United States."

 We take it plaintiffs are claiming by this assertion that in applying the reductions or suspensions of the monthly benefits the Secretary takes property from them without a prior evidentiary hearing without due process of law. The parties have not met this issue either in their briefs or at the hearing. Plaintiffs make no specific allegation about the lack of a prior hearing in their complaint. The second and last sentence of Fed.R.Civ.P. 54(c) provides: ". . . Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." This rule applies to summary judgment proceedings. Davis v. Romney, 490 F.2d 1360, 1367 (3rd Cir. 1974). It also applies to an omitted ground for relief. Hamill v. Maryland Cas. Co., 209 F.2d 338, 340 (10th Cir. 1954); 10 Wright & Miller, Fed.Pract. and Proc. § 2664. There exists a class of social security beneficiaries, such as disability claimants, the termination of whose benefits without a hearing is considered to be violative of due process. See, for example, Eldridge v. Weinberger, 361 F.Supp. 520 (W.D.Va.1973). Here, plaintiffs do not deny having excess wages or earnings for the months in which benefits were withheld. No hearing is necessary to determine that fact. If there is a class of retirement beneficiaries, the suspension of whose benefits could arguably be claimed to violate due process, none of the named plaintiffs have been shown to be in that class. They, therefore, cannot validly seek to vindicate the rights of those members. A named

---

13. At least one Senator is in favor of repealing the earnings limitation. See the condensed version appearing in *Reader's Digest* (August '74) of an article written by Senator Barry. Goldwater (R-Ariz.) printed in the *American Association of Retired Persons News Bulletin* (February '74). A recent article makes a compelling argument for legislative reform. See, Alberts, "Catch 65," *New York Times Magazine* (August 4, 1974). This article also contends that the Social Security Act discriminates against women. Since the parties have not raised the issue of sex discrimination, we express no opinion on the merits of this controversy.

plaintiff must be a member of the class he seeks to represent. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Broomer v. Schultz, 239 F.Supp. 699, 703 (E.D.Pa.1965), aff'd per curiam, 356 F.2d 984 (3rd Cir. 1966); 7 Wright & Miller, Fed.Pract. and Proc. § 1761.

The motion for summary judgment will be granted, each party to bear its own costs.

## ORDER

And now, to wit, this 21st day of November, 1974, it is ordered as follows:

1. Defendants' motion to dismiss that part of the complaint seeking to recover Federal Insurance Contribution Act taxes for lack of jurisdiction is granted.

2. Defendants' motion to dismiss the complaint as to plaintiffs Herman Notgernic and Albert F. Ceres, Jr., for lack of jurisdiction over the subject matter of this action is granted.

3. Defendants' motion to dismiss the complaint as to plaintiffs Emanuel Mazer and Harry Seder for lack of jurisdiction over the subject matter of this action other than the claim for the recapture of Federal Insurance Contribution Act taxes paid is denied.

4. Defendants' motion to dismiss the complaint on the ground that plaintiffs have not exhausted their statutory remedies under the Social Security Act, 42 U.S.C. § 301 et seq., is denied.

5. Plaintiffs' motion for a class action determination is granted.*

6. Defendants' motion to dismiss the complaint for failure to allege a claim upon which relief may be granted and for summary judgment of dismissal is granted.

7. Plaintiffs' claim for monetary relief under the Social Security Act is denied.

8. Plaintiffs' request for injunctive relief and enjoining the application of § 203(b) and related subsections of the Social Security Act, 42 U.S.C. § 403(b) and related sections, is denied.

9. Each party shall bear its own costs.

---

* Judge Garth dissents from so much of the within order as would grant plaintiffs' motion for a class action. *See* page 1327, *supra*, fn. 9.