**MOW SUN WONG et al., Plaintiffs,**

v.

**Robert E. HAMPTON, Chairman of the United States Civil Service Commission, et al., Defendants.**

**No. C–70 2730.**

United States District Court,
N. D. California,
Aug. 30, 1971.

Stephen M. Lowe, Wong, Siedman & Lowe, San Francisco, Cal., for plaintiffs.

Brian B. Denton, Asst. U. S. Atty., N.D. California for defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

PECKHAM, District Judge.

This is an action by Chinese residents of the United States, seeking to overturn regulations of the United States Civil Service Commission ("Commission") which exclude these non-citizens from the competitive civil service. 5 C. F.R. § 338.101 (1971). The Commission is authorized to establish standards with respect to citizenship by Executive Order No. 10577 § 2.1(a), 19 Fed.Reg. 7521:

> The Commission shall be responsible for open competitive examinations for admission to the competitive service which will fairly test the relative capacity and fitness of the persons examined for the position to be filled. The Commission is authorized to establish standards with respect to citizenship, age, education, training and experience, suitability, and physical and mental fitness, and for residence or other requirements which applicants

must meet to be admitted to or rated in examinations.

The authority whereby the President promulgated this Executive Order lies in the delegation by Congress to the President to promulgate standards for admission into the civil service. 5 U.S.C. § 3301.

Plaintiffs—Chinese residents who have been denied the opportunity to apply for federal civil service jobs—challenge only the Commission's regulation. In pertinent part, that regulation reads:

§ 338.101 *Citizenship*

(a) A person may be admitted to competitive examination only if he is a citizen of or owes permanent allegiance to the United States.

(b) A person may be given appointment only if he is a citizen of or owes allegiance to the United States. * * *

Plaintiffs contend that this regulation contravenes the due process clause of the Fifth Amendment; violates Executive Order No. 11478 (relating to freedom from job discrimination within the federal government) and conflicts with § 502 of the Public Works Appropriation Act, 1970, Pub.Law 91–144, 83 Stat. 336–337, (relating to compensation of employees of the government). Plaintiffs seek a declaration of invalidity of the Commission's regulation on any one of the above grounds, and an injunction to restrain the defendants—who are members of the Civil Service Commission, the Administrator of the General Services Administration, and the heads of various other governmental agencies—from continuing to act upon the regulation.

Initially, the government contends in response that no subject matter jurisdiction resides in this court, or that sovereign immunity stands as a bar to this action. The court rejects both of these contentions.

■ Subject matter jurisdiction over this action is conferred by 28 U.S.C. § 1331(a), the federal question section. That provision grants to this court original jurisdiction of all civil actions wherein the matter in controversy exceeds $10,000 and arises under the Constitution or laws of the United States. Plaintiffs specifically allege that "the matter in controversy" from their viewpoint is certainly in excess of the jurisdictional amount. While it is admittedly difficult to value the right to a job, looking at the issue from the vantage of plaintiffs (see 1 Moore's Federal Practice, ¶0.91[1] at 827) and considering the importance of the right asserted (cf. Hague v. C. I. O., 307 U.S. 496, 529–532, 59 S.Ct. 954, 83 L.Ed. 1423 (separate opinion of Mr. Justice Stone); Murray v. Vaughn, 300 F.Supp. 688, 694–695 (D.R.I.1969), the court is persuaded that the jurisdictional amount is satisfied by each plaintiff herein. Moreover, § 1331 is available as a jurisdictional basis even though no monetary relief is sought. See 1 Moore's Federal Practice, ¶0.95 at 862–863.

There is of course no doubt that this action is one which "arises under" the Constitution and the laws of the United States. The basic allegation is that the Commission's regulation is invalid because it is unconstitutional or at least is fatally inconsistent with a Congressional enactment. In other words, a non-frivolous claim is set up and rests directly upon federal law. Accordingly, the action "arises under" that law within the meaning of § 1331. See generally Wright, Federal Courts (2nd Ed. 1970) §§ 17, 18. This court therefore has jurisdiction of the within action.

■■ The government also contends that this suit is in reality one against the United States, the sovereign, and that no statute sets up the right to sue the United States herein. That is, the sovereign has not waived its immunity from suit. This contention is easily met, however. Whether or not a given suit can properly be characterized as one against the sovereign—an inquiry which is probably analytically unsound anyway—the established law is that sovereign immunity does not bar a suit against federal officers where it is alleged that

the officer's action is "not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962), quoting from and reaffirming Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 702, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). See generally 3 Davis on Administrative Law (Treatise), § 27.01 at 546–547, § 27.03, § 27.10. Since the plaintiffs in this action contend that the defendants' actions violate both the Constitution and their statutory authority, the doctrine of sovereign immunity is certainly inapplicable. Laycock v. Kenney, 270 F.2d 580, 584 (Ninth Cir. 1959).

On the merits of the case, the court believes the non-constitutional arguments of the plaintiffs to be more substantial than their constitutional arguments, but for the reasons to be stated herein, it is the government's urgings on the merits which are correct.

■ Plaintiffs contend that the Commission regulation in question contravenes Executive Order No. 11478, 34 Fed.Reg. 12985 (Filed August 8, 1969) (Ex. "C" to complaint). This Order declares it to be the policy of the Government that equal opportunity shall exist within the Federal Government, and that discrimination based upon race, color, religion, sex, or national origin is expressly prohibited. Plaintiffs hinge upon the reference to "national origin" and conclude that discrimination based upon citizenship status is prohibited. But from the face of the document itself, this conclusion appears incorrect. The initial language of the Order is: "It has long been the policy of the United States Government * * *", indicating that this Order was not intended to establish a new policy generally, let alone a new policy specifically on the subject of citizenship as a prerequisite to entrance to the competitive civil service. Furthermore, it is reasonably clear that the reference to "national origin" was intended to convey the policy that

*as between United States citizens,* no distinction should be made on the basis of their respective national origins. Thus, the reasonable interpretation of the Executive Order in question establishes that the Commission's regulation is not violative of that Order.

■ This analysis of the Order has proceeded upon the assumption that a purported conflict between an Executive Order and an agency regulation is court reviewable. That is, plaintiffs assume that an agency regulation may be declared invalid on the basis of an Executive Order. This proposition appears highly doubtful, and even more so in the case of an Executive Order which merely declares a general policy. Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965); National Ass'n of Internal Revenue Emp. v. Dillon, 123 U.S.App.D.C. 58, 356 F.2d 811 (1966). Thus, this court would also conclude that even if the Commission's regulation did conflict with the Executive Order, such a conflict would not be judicially reviewable.

Plaintiffs' other main non-constitutional argument is that the Commission's regulation is inconsistent with § 502 of the Public Works Appropriation Act, 1970, Pub.Law 91–144, 83 Stat. 336–337, which provides in pertinent part as follows:

[N]o part of any appropriation contained in this or any other Act shall be used to pay the compensation of any officer or employee of the Government of the United States (including any agency the majority of the stock of which is owned by the Government of the United States) whose post of duty is in continental United States unless such person (1) is a citizen of the United States, (2) is a person in the service of the United States on the date of enactment of this Act, who, being eligible for citizenship, had filed a declaration of intention to become a citizen of the United States prior to such date, (3) is a person who owes allegiance to the United States * * *

Plaintiffs contend that the Civil Service Commission has impermissibly narrowed this Congressional enactment by wholly omitting that class of persons within category (2), and by restricting those within category (3) to persons who owe permanent allegiance to the United States. 5 C.F.R. § 338.101. It appears to this court, however, that the above section of the Appropriations Act did *not* derogate from the power of the Executive, granted in 5 U.S.C. § 3301, to establish standards for admission to the competitive civil service. Section 502 of the Appropriations Act has been part of the Act since the 1963 Act. There is no legislative history dealing with the provision. From this, two guides emerge: (1) the provision was obviously not intended to institute a significant change in Congressional policy, else debate would have surfaced; and (2) this court, in understanding this provision, should give to it whatever plain and natural meaning its words convey.

Following these guides, the court does not find any conflict between the provision of the Act and the Commission regulation. The Act merely sets forth those categories of persons who may be paid for their work as a federal employee. The Act does *not* state that those categories of persons must be eligible for competitive civil service positions.

■ This distinction is not a trifling one. The point of it is that Congress has in broad terms granted to the Executive the authority to establish standards for admission into the civil service. 5 U.S.C. § 3301. Plaintiffs would have the court, however, read a provision in an Appropriations Act as negating that express grant of authority. The more sensible view of the relationship between § 502 of the Public Works Appropriations Act and 5 U.S.C. § 3301 is that § 502 merely sets forth the broad contours within which the Executive (the Commission) is free to use its good judgment and expertise. Thus, on the

court's view of § 502 and the Commission regulation, no conflict appears. The Commission has acted permissibly in relation to the Appropriations Act in not opening up the civil service to all those whom Congress has indicated it would be willing to pay for their work.

Buttressing this conclusion is the observation that the authority and the discretion to establish standards for civil service qualification resided in the Executive long prior to the passage of § 502 of the Appropriations Act. If Congress had intended to withdraw this discretion, some mention of this important purpose would surely have been made, either in the Congressional debates, or on the face of the statute itself. Changes in established policy are not usually implemented silently. The court therefore concludes that the Commission's regulation is not invalid as inconsistent with the Appropriations Act.

Plaintiffs' constitutional arguments, while certainly not frivolous, are not as persuasive as the non-constitutional arguments just rejected.

Plaintiffs contend that the classification herein, between citizen and non-citizen, is subject to the rigid scrutiny of the "compelling interest" test, either because the classification is inherently suspect, or infringes upon a fundamental right. Plaintiffs then contend that when this strict test is applied, the classification must fall, since the federal government can offer no compelling justification.

In the court's view, however, this mode of analysis is incorrect. The Supreme Court has consistently pointed out that Congressional power—and, by a proper delegation, Executive power—respecting aliens is quite broad, almost plenary. Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1951); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1949); Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1951). This extensive power is

based in part upon the following considerations enunciated by Mr. Justice Jackson:

> It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference. [citations omitted].

Harisiades v. Shaughnessy, 342 U.S. at 588–589, 72 S.Ct. at 519. The broad power over aliens also stems from Article 1, § 8, Cl. 4 of the Constitution, wherein Congress is given the exclusive power, "To establish a uniform rule of naturalization", and from Article 1, § 8, Cl. 18, wherein Congress is empowered to make all laws which are "necessary and proper" for carrying into execution its enumerated powers. Moreover, the plenary power of the Congress with respect to aliens is further illustrated by those Supreme Court cases which have struck down state statutes respecting aliens because these statutes conflicted with the federal power to regulate immigration and naturalization. E. g., Torao Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1947); *and cases cited therein* at 334 U.S. 419, n. 6, 68 S.Ct. 1138. In the latter case, Mr. Justice Black spoke for seven members of the Court:

> The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. 334 U.S. at 419, 68 S.Ct. at 1142.

■ Given these authoritative statements on both the expansiveness of the power over aliens, and the partially political, non-justiciable content of that power, this court cannot agree with plaintiffs herein that the federal government must demonstrate a compelling interest for the classification it has drawn between citizens and non-citizens.[1] Rather, the proper standard of scrutiny here is the traditional one: Does the classification have a rational basis? or: Is the regulation reasonably adapted to some permissible end? See generally Shapiro v. Thompson, 394 U.S. 618, 661–663, 89 S.Ct. 1322, 22 L.Ed.2d 600 (dissenting opinion of Mr. Justice Harlan).

■ When the classification herein is considered on the basis of this test, its validity is clear. The competitive civil service is an integral part of the Executive Branch of the government. It is quite rational and reasonable for the Executive, via a grant of power from the Legislature, to determine that the formation of policy and its execution, at whatever level, should be entrusted only to United States citizens. Moreover, as an alternative rational basis for the regulation herein, the Executive may intend that the economic security of its citizens be served by the reservation of competitive civil service positions to them, rather than to aliens.

The wisdom of the policy attacked in this court is simply not in issue here. The court must confine its inquiry more narrowly. Within this narrower examination, the court can only conclude that the government has the right to provide for the economic security of its citizens before its resident aliens, and that the government is entitled to think that it

---

1. The court notes that the regulation of the Civil Service Commission here under attack does not in fact draw a bright line between citizens and non-citizens, since those who owe permanent allegiance to the United States are also grouped with citizens. Just what constitutes permanent allegiance short of citizenship itself is not clear, but the plaintiffs have intentionally not availed themselves of that category since they aver only allegiance, not permanent allegiance, and attack the latter requirement.

will function more smoothly and efficiently and more securely if competitive civil service positions are limited to citizens.

Accordingly, the court concludes that plaintiffs have failed to state a claim upon which relief can be granted. The defendants' motion to dismiss is granted; plaintiffs' motion for summary judgment is denied. The case is ordered dismissed.

So ordered.