**MOW SUN WONG et al., Appellants,**

**v.**

**Robert E. HAMPTON, Chairman of the United States Civil Service Commission, et al., Appellees.**

**No. 72–1079.**

United States Court of Appeals, Ninth Circuit.

Jan. 25, 1974.

Certiorari Granted June 10, 1974. See 94 S.Ct. 3067.

Dennis A. Lee, Jack Siedman (argued), of Wong, Siedman & Lee, San Francisco, Cal., Edward H. Steinman (argued), Asst. Professor of Law, Santa Clara, Cal., for appellants.

James L. Browning, Jr., U. S. Atty., Alan S. Rosenthal and Bruno A. Ristau (argued), U. S. Dept. of Justice, Washington, D. C., for appellee.

Before BARNES, WRIGHT and WALLACE, Circuit Judges.

## OPINION

BARNES, Circuit Judge:

On December 27, 1970, appellants, five resident aliens who immigrated to the United States from China, instituted a class action against appellees seeking injunctive relief to prevent appellees from enforcing regulations which excluded appellants as resident aliens, from the federal competitive civil service. They also sought injunctive relief to prevent appellees from denying appellants the opportunity to apply for such federal employment positions on the basis of alienage, and a declaratory judgment declaring those portions of the regulations which automatically disqualified aliens from federal competitive civil service positions illegal and void and violative of their constitutional and statutory rights to pursue such jobs.

On August 31, 1971, the District Court denied appellants' motion for summary judgment and granted appellees' motion to dismiss. Mow Sun Wong v. Hampton, 333 F.Supp. 527 (N.D.Cal. 1971).

■ This appeal is before this court pursuant to rule 4(a) Fed.R.App.P. As held by the district court, jurisdiction is predicated on 28 U.S.C. § 1331(a) and the $10,000 matter in controversy requirement is met by each of the named class for the reasons concluded by the lower court. Id. at 529.[1]

The primary issue which confronts us is a constitutional attack by appellants as resident aliens, upon the regulations of the United States Civil Service Commission (hereinafter "Commission") which, in effect, excludes such aliens from employment in the federal competitive civil service. 5 C.F.R. § 338.101 (1971).[2] The constitutional question is closely similar to that which the Supreme Court refused to intimate a view on, in its recent decision of Sugarman v.

[1]. Since an injunction is sought against enforcement of an administrative regulation (5 C.F.R. § 338.101), as distinguished from an Act of Congress, it was not necessary for appellants to request that a three-judge court be empaneled under 28 U.S.C. § 2282.

[2]. C.F.R. § 338.101 (1972), the Commission regulations, provide:

"(a) A person may be admitted to competitive examination only if he is a citizen of or owes permanent allegiance to the United States.

"(b) A person may be given appointment only if he is a citizen of or owes permanent allegiance to the United States. However, a non-citizen may be given (1) a limited executive assignment under section 305.509 of this chapter in the absence of qualified citizens or (2) an appointment in rare cases under section 316.601 of this chapter, unless the appointment is prohibited by statute."

Dougall, 413 U.S. 634, 93 S.Ct. 2842 (1973): whether the federal citizenship requirements of such provisions as 5 U.S.C. § 3301, Executive Order 10577, 19 Fed.Reg. 7521, § 2.1 (1954), 5 C.F.R. § 338.101, and § 502 of the Public Works Appropriation Act 1971, Pub.Law 91–439, 84 Stat. 902 are or are not susceptible to constitutional challenge. *See also* In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). *Cf.* People v. Rodriguez, 35 Cal.App.3d 900, 111 Cal.Rptr. 238 (1973).

In *Dougall* the Court held that a New York statute, which denied aliens the right to hold positions in New York's classified competitive civil service, violated the Fourteenth Amendment's equal protection guarantee. The issue before this Court on appeal is whether the United States Civil Service Commission may, consistent with the Fifth Amendment's due process guarantee, exclude appellants and all other resident aliens from obtaining employment in the federal competitive civil service.

However, before we are able to decide the constitutional issue, it is necessary to determine if the lower court correctly decided the non-constitutional arguments presented by appellants.

## I. NON-CONSTITUTIONAL ISSUES.

█ Appellants contend that the Commission regulations, 5 C.F.R. § 338.101 (restricting employment to citizens), are invalid since they exceed the authority provided by Congress in § 502 of the Public Works Appropriation Act, *supra*.[3] The district court rejected this contention and held that the regulations did not exceed or conflict with § 502.333 F. Supp. at 531[4] states:

"... Congress has in broad terms granted to the Executive the authority to establish standards for admission into the civil service. 5 U.S.C. § 3301. Plaintiffs would have the court, however, read a provision in an Appropriations Act as negating that express grant of authority. The more sensible view of the relationship between § 502 of the Public Works Appropriations Act and 5 U.S.C. § 3301 is that § 502 merely sets forth the broad contours within which the Executive (the Commission) is free to use its good judgment and expertise. Thus, on the court's view of § 502 and the Commission regulation, no conflict appears. The Commission has acted permissibly in relation to the Appropriations Act in not opening up the

3. The Public Works Appropriation Act, 1970, Pub.L.No.91–144, 83 Stat. 323, 336 (Dec. 11, 1969), provides in pertinent part as follows: "Sec. 502. Unless otherwise specified and during the current fiscal year, no part of any appropriation contained in this or any other Act shall be used to pay the compensation of any officer or employee of the Government of the United States . . . whose post or duty is in continental United States unless such person (1) is a citizen of the United States, (2) is a person in the service of the United States on the date of enactment of this Act, who, being eligible for citizenship, had filed a declaration of intention to become a citizen of the United States prior to such date, (3) is a person who owes allegiance to the United States, or (4) is an alien from Poland or the Baltic countries lawfully admitted to the United States for permanent residence. . . . *Provided further*, That any payment made to any officer or employee contrary to the

provisions of this section shall be recoverable in action by the Federal Government. This section shall not apply to citizens of the Republic of the Philippines or to nationals of those countries allied with the United States in the current defense effort, or to temporary employment of translators, or to temporary employment in the field service (not to exceed sixty days) as a result of emergencies."

4. It is to be noted that if this court were to reverse the District Court on these non-constitutional issues, then it would be unnecessary to reach the constitutional issue, since our holding would be in essence that the regulations are an illegal extension of the authority delegated by Congress to establish requirements for employment . in the Executive Branch. *See* Jalil v. Hampton, 148 U.S.App.D.C. 415, 460 F.2d 923, 931. However as the text discusses, we affirm the District Court as to the non-constitutional issues.

civil service to all those whom Congress has indicated it would be willing to pay for their work."

We agree with the district court on this point. The appropriations acts are not the basis for the regulations and the Commission has acted permissibly in enacting its regulation.

The regulations prohibiting non-citizens from the competitive civil service (5 C.F.R. § 338.101), were issued pursuant to an executive order, Executive Order No. 10577,[5] which itself was issued upon the authority of a federal enabling act, the Civil Service Act, 5 U.S.C. § 3301.[6]

"Ostensibly clear-cut, the chain of statutory authority progresses from the enabling act, providing the President with delegatable [sic] powers, to the executive order, granting certain of those powers to the Civil Service Commission, to the specific regulation designed to ascertain the fitness of applicants by establishing standards with respect to citizenship."

Comment, Aliens And The Civil Service: A Closed Door? 61 Geo.L.J. 207, 209 (1972).[7]

■ Appellants' second contention of a non-constitutional nature is that the Commission's regulation contravenes Executive Order No. 11478, 34 Fed.Reg. 12985 (1969),[8] which declares it to be the policy of the Federal Government to provide equal opportunity in Federal

---

5. Sec. 2.1 of Exec. Order No. 10577, 19 Fed. Reg. 7521 (1954), 5 U.S.C. § 3301 (1967), provides in pertinent part as follows:

"(a) . . . The [Civil Service] Commission is authorized to establish standards with respect to citizenship, age, education, training and experience, suitability, and physical and mental fitness, and for residence or other requirements which applicants must meet to be admitted to or rated in examinations."

6. 5 U.S.C. § 3301 (1970 ed.) provides:

"The President may—

(1) prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service;

(2) ascertain the fitness of applicants as to age, health, character, knowledge, and ability for the employment sought; and

(3) appoint and prescribe the duties of individuals to make inquiries for the purpose of this section."

7. The same commentator attacks what he terms the inconsistency on one hand of the President explicitly authorizing the Commission to set standards with respect to citizenship, Executive Order 10577, supra, and on the other hand the Commission expressly excluding all noncitizens from the competitive civil service. 61 Geo.L.J. supra at 210. He concludes that it is improbable that such action is permissible in view of the wording of the Civil Service Act. However, we find this argument, along with appellents' contention on the issue, although persuasive, lacking substance and authority, and we agree with the District Court.

8. Exec. Order No. 11478, 34 Fed.Reg. 12985 (1969) :

EQUAL EMPLOYMENT OPPORTUNITY IN THE FEDERAL GOVERNMENT

It has long been the policy of the United States Government to provide equal opportunity in Federal employment on the basis of merit and fitness and without discrimination because of race, color, religion, sex, or national origin. All recent Presidents have fully supported this policy, and have directed department and agency heads to adopt measures to make it a reality.

As a result, much has been accomplished through positive agency programs to assure equality of opportunity. Additional steps, however, are called for in order to strengthen and assure fully equal employment opportunity in the Federal Government.

Now, Therefore, under and by virtue of the authority vested in me as President of the United States by the Constitution and statutes of the United States, it is ordered as follows:

Section 1. It is the policy of the Government of the United States to provide equal opportunity in Federal employment for all persons, to prohibit discrimination in employment because of race, color, religion, sex, or national origin, and to promote the full realization of equal employment opportunity through a continuing affirmative program in each executive department and agency. This policy of equal opportunity applies to and must be an integral part of every aspect of personnel policy and practice in the employment, development, advancement, and

employment for all persons, and to prohibit discrimination in employment because of race, color, religion, sex or *national origin.* Appellant alleges the key term, "national origin," was intended to apply to permanent resident aliens. The district court, however, correctly interpreted the term "national origin" as being limited to discrimination between United States citizens only and that no distinction should be made on the basis of their respective national origins.

Despite an Equal Employment Opportunity Commission guideline [9] prohibit-

treatment of civilian employees of the Federal Government.

Sec. 2. The head of each executive department and agency shall establish and maintain an affirmative program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction in accordance with the policy set forth in section 1. It is the responsibility of each department and agency head, to the maximum extent possible, to provide sufficient resources to administer such a program in a positive and effective manner; assure that recruitment activities reach all sources of job candidates; utilize to the fullest extent the present skills of each employee; provide the maximum feasible opportunity to employees to enhance their skills so they may perform at their highest potential and advance in accordance with their abilities; provide training and advice to managers and supervisors to assure their understanding and implementation of the policy expressed in this Order; assure participation at the local level with other employers, schools, and public or private groups in cooperative efforts to improve community conditions which affect employability; and provide for a system within the department or agency for periodically evaluating the effectiveness with which the policy of this Order is being carried out.

Sec. 3. The Civil Service Commission shall provide leadership and guidance to departments and agencies in the conduct of equal employment opportunity programs for the civilian employees of and *applicants for employment within the ex-*ecutive departments and agencies in order to assure that personnel operations in Government departments and agencies carry out the objective of equal opportunity for all persons. The Commission shall review and evaluate agency program operations periodically, obtain such reports from departments and agencies as it deems necessary, and report to the President as appropriate on overall progress. The Commission will consult from time to time with such individuals, groups, or organizations as may be of assistance in improving the Federal program and realizing the objectives of this Order.

Sec. 4. The Civil Service Commission shall provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal employment on the basis of race, color, religion, sex, or national origin. Agency systems shall provide access to counseling for employees who feel aggrieved and shall encourage the resolution of employee problems on an informal basis. Procedures for the consideration of complaints shall include at least one impartial review within the executive department or agency and shall provide for appeal to the Civil Service Commission.

Sec. 5. The Civil Service Commission shall issue such regulations, orders, and instructions as it deems necessary and appropriate to carry out this Order and assure that the executive branch of the Government leads the way as an equal opportunity employer, and the head of each executive department and agency shall comply with the regulations, orders, and instructions issued by the Commission under this Order.

Sec. 6. This Order applies (a) to military departments as defined in section 102 of title 5, United States Code, and executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code, and to the employees thereof (including employees paid from nonappropriated funds), and (b) to those portions of the legislative and judicial branches of the Federal Government and of the Government of the District of Columbia having positions in the competitive service and to the employees in those positions. This order does not apply to aliens employed outside the limits of the United States.

Sec. 7. Part I of Executive Order No. 11246 of September 24, 1965, and those parts of Executive Order No. 11375 of October 13, 1967, which apply to Federal employment, are hereby superseded.

/s/ RICHARD NIXON

THE WHITE HOUSE,

August 8, 1969.

[F.R. Doc. 69-9556; Filed, Aug. 8, 1969; 4:24 p. m.]

9. 29 C.F.R. § 1606.1(d) states in part:
"Because discrimination on the basis of citizenship has the effect of discriminating

ing citizenship discrimination, the Supreme Court in a recent decision, Espinoza v. Farah Manufacturing Co., Inc., 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973), held that such discrimination does not always constitute "national origin" discrimination, and thus is not necessarily barred by § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1). The Court found that nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage. *Id.* 414 U.S. at 86, 94 S.Ct. 334. *Espinoza's* application to this case is limited in that it involved only private employment, whereas we are concerned with the right to federal employment under the Civil Service.[10]

■ Appellants with good reason suggest that § 6 of Executive Order No. 11478, in stating: "This order does not apply to aliens employed outside the limits of the United States," is proof that the order was intended to apply to aliens employed inside the limits of the United States. However, assuming such an interpretation is justified and the Executive Order is ambiguous on this point so as to permit an interpretation, we still agree with the lower court that even if we are to assume the regulation contravenes Executive Order 11478, such conflict would not be judicially reviewable (333 F.Supp. at 530), because the Executive Order merely declares a general policy.

Appellants argue that such a conclusion is directly contra to the holding of Jalil v. Hampton, *supra*, discussed *infra*, which specifically states such an order is judicially reviewable. But the executive order referred to in *Jalil* as being reviewable was not one declaring a general policy, but was the same Executive Order No. 10577 which was the authority upon which the regulations were based.

## II. CONSTITUTIONAL ISSUES.

The Commission regulations allow a person to be admitted to competitive examination or given appointment "only if he is a citizen of or owes permanent allegiance to the United States." 5 C.F.R. § 338.101(a)(b). The district court, relying on immigration cases concerning entry and deportation, concludes that Congress' plenary power over aliens lessens the proper standard of judicial scrutiny to be applied to the discrimination and exclusion of aliens from the federal competitive civil service to that of whether the classification has a rational basis. 333 F.Supp. at 532. Appellants contend that the proper burden for the government to meet is that of showing a compelling government interest to justify the discrimination against them and other resident aliens similarly situated by the Commission regulations.

■ To state that Congress' plenary power over aliens enables the federal government to unreasonably discriminate against aliens, neglects to consider the fact that even Congressional plenary power is subject to Constitutional limits. United States v. Thompson, 147 U.S. App.D.C. 1, 452 F.2d 1333, 1338 (1971) (Appellants' Brief, pp. 18–19).[10a]

The rationales and holdings of Sugarman v. Dougall, *supra*, and Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), although not squarely controlling (because they deal with the states' power to discriminate

on the basis of national origin, a lawfully immigrated alien who is domiciled or residing in this country may not be discriminated against on the basis of his citizenship. . . ."

10. It is noted that in *Espinoza*, the Court explicitly stated that it "need not address that question here, for the issue presented in this case is not whether Congress has the power to discriminate against aliens in federal employment, but rather, whether Congress intended to prohibit such discrimina-

tion in private employment." *Id.* at 91–92, 94 S.Ct. at 338. The Court recognized this pending case in a footnote. *Id.* at 91, n. 4, 94 S.Ct. 334.

10a. With its plenary power, Congress can prevent or limit the number of aliens entering the country, and thus, can decrease or eliminate the problem raised in this case. But once legally within our country's borders, there are constitutional limitations as to how aliens can be treated by the government, vis-a-vis citizens of this country.

against aliens *vis-à-vis* the Fourteenth Amendment) are instructive and significant when applied to the case at hand.

*Dougall* involved Section 53(1) of the New York Civil Service Law McKinney's Consol.Laws, c. 7 which read:

> "Except as herein otherwise provided, no person shall be eligible for appointment for any position in the competitive class unless he is a citizen of the United States." 413 U.S. at 635, 93 S.Ct. at 2844.

Justice Blackmun, in holding that the statute violates the Fourteenth Amendment equal protection guarantee, stressed the fact that Section 53 is neither narrowly confined nor precise in its application. Its imposed ineligibility may apply to the " 'sanitation man, class B' (citation omitted), to the typist, and to the office worker, as well as to the person who directly participates in the formulation and execution of important state policy. The citizenship restriction sweeps indiscriminately." *Id.*, 93 S.Ct. at 2848.

The Commission regulation here also sweeps indiscriminately excluding *all* aliens from *all* positions requiring the competitive Civil Service examination. See Jalil v. Hampton, *supra*, 460 F.2d at 930 (Bazelon, J., dissenting).

The Court in *Dougall* was careful to point out that it did not hold that on an individual determination an alien could not be refused or discharged from public employment, even on the basis of noncitizenship, but only if a legitimate state interest relating to qualification for a particular position or to the characteristics of the employee were present. Sugarman v. Dougall, *supra* 413 U.S. at 645, 93 S.Ct. 2842. Thus, for instance, in the present case, if national security were involved in a particular position, or requirements of citizenship as qualifications for political office, the government interest would be compelling enough to offset discrimination against aliens. But, a flat prohibition from any level of fed-

eral employment as the regulations dictate creates a different situation. The appellants named in the class are a janitor, file clerk, clerk typist, mail clerk, and educational evaluator. (Appellants' Brief pp. 3–5). Surely these positions and the majority of civil service positions [11] do not actually participate either in the making or in the execution of national policy, as contended by appellees. (Appellees' Brief p. 13).

 Aliens are a "suspect" class, as stated in Graham v. Richardson, *supra* 403 U.S. at 372, 91 S.Ct. 1852, because aliens "are a prime example of a 'discrete and insular' minority (*see* United States v. Carolene Products Co., 304 U.S. 144, 152–153, n. 4 [58 S.Ct. 778, 82 L.Ed. 1234] (1938)) . . ." and classifications based on alienage are "subject to close judicial scrutiny." 403 U.S. at 372, 91 S.Ct. 1848.

Appellees urge that *Graham's* holding be limited to a welfare case. However, *Dougall* clearly cites *Graham* as authority for imposing a compelling state interest test in the field of public employment. 413 U.S. at 642, 93 S.Ct. 2842; *see also* Chapman v. Gerard, 456 F.2d 577 (3d Cir. 1972); Younus v. Shabat, 336 F.Supp. 1137 (N.D.Ill., 1971). (Appellants' Reply Brief pp. 8–10).

 In Nielsen v. Secretary of Treasury, 137 U.S.App.D.C. 345, 424 F.2d 833 (1970), the court referred to decisions invalidating state measures discriminating against aliens, and although the holding is inapposite to our situation, the case is relevant in displaying recognition that the federal government, like a state, must show reasonableness of and justification for any measure discriminating against aliens. *Id.* at 846.

Although in *Dougall* and *Graham*, aliens were protected from discrimination on the basis of the Equal Protection Clause of the Fourteenth Amendment, can the equal protection guarantee against alien discrimination be implied

---

11. ". . . the Civil Service Commission, discriminates against resident aliens as a class, prohibiting them from qualifying for approximately 2,689,800 government jobs." 61 Geo.L.J. *supra* at 220.

in the Due Process Clause of the Fifth Amendment? In Bolling v. Sharpe, 347 U.S. 497, at 499, 74 S.Ct. 693, at 694, 98 L.Ed. 884 (1954) the Supreme Court stated:

> "The Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states. But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and therefore, we do not imply that the two are always interchangeable phrases. But [the] Court has recognized, discrimination may be so unjustifiable as to be violative of due process."

See also Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964).

■ Bolling v. Sharpe thus makes clear that a federal law may impose such an impermissible discrimination as to be a denial of due process. A number of lower court decisions have recognized this relation between the equal protection guarantee and the Due Process Clause. Morris v. Richardson, 346 F.Supp. 494, 499 (N.D.Ga.1972); [12] Faruki v. Rogers, 349 F.Supp. 723 (D.D.C.1972).[13] See also Moritz v. C. I. R., 469 F.2d 466 (10th Cir. 1972); In re Smith, 323 F. Supp. 1082 (D.Colo.1971) stating at 1088:

> "By characterizing the problem presented in this case as one of equal protection, we do not mean to suggest that fifth amendment due process takes in all of fourteenth amendment

equal protection. It is enough to note that fifth amendment due process does include an equal protection principle, Shapiro v. Thompson, 394 U.S. 618, 641–642 [89 S.Ct. 1322, 22 L.Ed.2d 600] (1969), and that the two provisions are co-extensive insofar as they prohibit discrimination based upon race, Bolling v. Sharpe, 347 U.S. 497, 499 [74 S.Ct. 693, 98 L.Ed. 884] (1954), and other discriminations which are invidious or deprive persons of constitutional rights. Shapiro v. Thompson, supra."

■ The question becomes whether or not the Commission's regulations result in such "unjustifiable discrimination as to be violative of due process." Section 352(a)(1) of the Immigration and Nationality Act of 1952 provided that a naturalized citizen, with some exceptions, loses citizenship by continuous residence for three years in the country of origin. Citing Bolling v. Sharpe's "unjustifiable discrimination" language, the Court held that the statute was discriminatory and violative of due process under the Fifth Amendment, since no restriction against length of foreign residence applied to native-born citizens. Similarly, a flat prohibition against aliens obtaining employment in the civil service is such discrimination to be a denial of due process unless the government can show a compelling interest for maintaining its classification. "While there may be no constitutional right to public employment as such, there is a constitutional right to be free from unreasonably discriminatory practices with respect to such employment." Whitner v. Davis, 410 F.2d 24, 30 (9th Cir. 1969).

In Jalil v. Hampton, *supra,* in what was essentially the same factual pattern

---

12. Provision of Social Security Act which disqualified certain illegitimate children from sharing equally with their half-siblings in survivors' benefits on death of wage-earner parent denied equal protection.

13. Held that statute providing that no person shall be eligible for appointment as a For-

eign Service officer until he has been a United States citizen at least ten years was not shown to be necessary to further a compelling governmental interest, and thus violated the equal protection guarantee applicable to the federal government through the due process clause of the Fifth Amendment.

as the present case (a challenge of the same Commission regulations), the District of Columbia Circuit remanded to the trial court to decide the non-constitutional questions, since there were no findings of fact in the district court's order. Judge Bazelon's dissent infers that the remand was based on a desire to "forbear" from ruling on the constitutional question and to dispose of the case on the non-constitutional issues. *Id.* 460 F.2d at 931. Here, findings of fact were made and as determined above in deciding the non-constitutional questions against appellant, a resolution of the constitutional issue is indeed necessary. The court in *Jalil* recognized that classifications based on alienage are suspect and that the government need justify such discrimination on the ground of a compelling governmental interest. *Id.* at 929. Judge Bazelon's dissent cites the extreme injustice involved in excluding all aliens from the federal competitive civil service, and refers to the lower court decision recently affirmed by the Supreme Court in *Dougall*:

> "In Dougall v. Sugarman, *supra,* a three-judge panel struck down, without a factual hearing, a New York statute which excluded all aliens from the competitive class of the Civil Service, on the grounds that none of the interests which New York advanced were adequate justifications for this classification under the standards of Graham v. Richardson. In the case before us, the federal government raises no different, or more compelling, interests. It is therefore inconceivable that the Government could establish a compelling state interest at a factual hearing to justify the exclusion of *all* aliens from *all* positions requiring the competitive Civil Service examination." *Id.* at 930.

The question remaining for us is whether the Government has established a compelling interest or proper government objective to justify the total exclusion of aliens from the federal competitive civil service.[14]

Appellees set forth various arguments supporting their position that there is a compelling government interest offsetting any discrimination on the basis of alienage. Also, the District Court raised various points in support of its finding that the regulations did not violate any constitutional provisions. Most of these points were rejected in *Dougall* when considering whether New York had shown a compelling interest counterbalancing its discriminatory classifications. When applied to the federal discrimination, the arguments break down for similar reasons.

The lower court, in its decision, accepted as one justification for the government's action, the government's "right to provide for the economic security of its citizens before its resident aliens." 333 F.Supp. at 532. This line of reasoning, termed the "special public interest" doctrine, Crane v. New York, 239 U.S. 195, 36 S.Ct. 85, 60 L.Ed. 218 (1915) (that the government satisfied the economic needs of its citizens by restricting distribution of its resources to its citizens), has been discredited and rejected by the Supreme Court in Graham v. Richardson, *supra.* The rejection of this doctrine is supported in the public employment area. Sugarman v. Dougall, *supra,* 413 U.S. at 642, 93 S.Ct. 2842. The California Supreme Court in Purdy & Fitzpatrick v. California, 71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645 (1969), also rejected the "economic security" justification, because the "alien may be a resident who has lived in California for a lengthy period, paid taxes, served in our armed forces, demonstrated his worth as a constructive human being, and contributed much to the growth and development of the state." *Id.* at 88, 456 P.2d at 656. A resident alien must assume certain obligations in return for being allowed to reside lawfully in the United States. He must pay

---

14. Appellants on page 24 of their brief make a strong argument for finding that even under the less onerous general rational relationship standard, the government fails to satisfy its burden.

taxes. He is subject to military service. 50 U.S.C.App. § 454(a). He contributes to the economic growth and welfare of this country. Graham v. Richardson, *supra*, 403 U.S. at 371, 91 S.Ct. 1848. While it might be thought he could and should cure his disability by simply applying for and obtaining his citizenship, there appears to be no logical justification for discrimination against aliens on economic grounds.

Appellees also contend that resident aliens have no constitutional right to make or carry out national policy or partake in any of the institutions of government. The lower court found that government "function(s) more smoothly and efficiently and more securely if competitive civil service positions are limited to citizens." 333 F.Supp. at 533. It is an oversimplification to infer, as appellees do, that all aliens should be excluded from the competitive civil service because they "should not be in a position to exercise national sovereignty; clearly, the large majority of civil service positions involve no such responsibilities." 61 Geo.L.J., *supra* at 220.

Appellees, however, assert that the factors of "loyalty and security" make Federal Government service differ vastly from the ordinary employer-employee relationship. This is indeed true. We have no doubt that under certain circumstances our government may, for loyalty and security reasons, properly require citizenship for certain government positions. But the Commission regulations fail to delineate any specific positions where security, loyalty and policy-making require that the citizenship requirement be essential for employment. Instead they automatically exclude all aliens from the competitive civil service; an instance of overbreadth.

Appellees point to the qualifications for high political office as authority for the proposition that the Constitution is clear in placing control of the government in the hands of citizens only. *Dougall* recognizes the state's right in an appropriately defined class of position to require citizenship as a qualification for office. We think this proper. But as with the Court in *Dougall,* we fail to see how a universal ban on alien employment can be justified because specific positions involve high degrees of security, loyalty, and policy-making. Thus, the problem of insuring loyalty, security and policy-making to citizens can be accomplished more effectively by classifying jobs as to their sensitive and nonsensitive nature. 61 Geo.L.J., *supra* at 221. The regulations fail to make any such distinction.

Appellees point to the universal practice of other nations requiring civil servants to be citizens. Such a contention, though relevant on the reasonableness of the discrimination, does not prove a compelling government interest. Its application toward solving the constitutional issue is questionable.[15]

The conclusion found in Purdy & Fitzpatrick v. California, *supra,* although a state employment case, also applies here that:

> "The discrimination involved denies arbitrarily to certain persons, merely because of their status as aliens, the right to pursue an otherwise lawful occupation. The classification within the statutory scheme operates irrationally without reference to any legitimate state interest except that of favoring United States citizens over citizens from other countries. This latter objective does not reflect such a compelling state interest that it would permit us to sustain this kind of discrimination." 79 Cal.Rptr. at 90, 456 P.2d at 658.

We hold that the Commission regulations unreasonably discriminate against resident aliens based solely on their status as aliens. We reject the contention of the appellants that the protection provided by the Fifth Amendment is co-extensive with the equal protection clause of the Fourteenth Amendment. However, in the fact situation of this case

---

15. *See* 61 Geo.L.J. *supra* at 221.

---

and with the broad sweep of the regulation involved, we hold that it so unjustifiable as to be violative of due process. Here there is no logical or persuasive reason advanced as to why aliens should be excluded from all federal civil service employment; nor is there a refinement of qualifications such as fluency with English, etc., which may or may not prevent employment of an alien. The broad sweep is the vice. It could be saved only by a compelling governmental interest. We have no doubt such a compelling government interest can be shown as to many civil service jobs, but the government has failed to show such a compelling interest for all jobs, and thus, the flat prohibition of the Commission regulations, 5 C.F.R. § 338.101, is a denial of due process, and unconstitutional. We thereby reverse and remand with instructions to grant appellants the injunctive relief sought.