ELAINE F. ELLIBEE, Secretary Administrator Board of Nursing andDivision of Nurses Department of Regulation and licensing
You have requested my opinion concerning the constitutionality of secs. 441.04, 441.07, and 441.10, Stats., with respect to the citizenship requirement contained therein.
Section 441.04 provides in material part
 "Any person who is a citizen or who has legally declared his intention to become a citizen . . . shall be entitled to examination . . . ."
Section 441.07 provides in material part.
 "The board may revoke, suspend or deny renewal of a certificate of registration of a nurse, or license of a trained practical nurse, upon proof that the person . . . has failed to become a citizen within 7 years after declaring such intent, . . ."
Section 441.10 (1) provides in material part:
 ". . . A citizen or an alien who has legally declared his intention to become a citizen, . . . may apply to the board for licensing as a trained practical nurse, and . . . shall be entitled to take an examination for such purpose . . . ."
Your first question is whether these provisions are in violation of the Constitution of the United States.
It is my opinion that secs. 441.04, 441.07, and 441.10, Stats., are manifestly unconstitutional in that they operate to deprive *Page 66 
resident aliens, as a class, from benefits mandated by theFourteenth Amendment to the United States Constitution.
The Fourteenth Amendment provides:
 ". . . [N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (Emphasis added.)
Since 1886, the United States Supreme Court has consistently held that a lawfully admitted resident alien is a "person" within the meaning of the Fourteenth Amendment's directive. Yick Wo v.Hopkins (1886), 118 U.S. 356, 369, 6 S.Ct. 1064, 31 L.Ed.2d 220.
The court in Torao Takahashi v. Fish and Game Commission
(1948), 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478, considered the issue whether or not California could use a federally created racial ineligibility for citizenship as a basis for barring Takahashi, a resident alien, from earning a living in California. In holding that California's purported ownership of fish in the ocean off its shores was not such a special public interest as would justify prohibiting aliens from making a living by fishing in those waters while permitting others to do so, it was said:
 "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide `in any state' on an equality of legal privileges with all citizens under non-discriminatory laws . . . . [T]he power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits." 334 U.S. at 420.
The court's holding was grounded on the additional theory that state laws which imposed discriminatory burdens upon the entrance or residence of aliens, lawfully within the United States, conflict with the constitutionally derived federal power to regulate immigration. Art. I, sec. 8, cl. 4, U.S. Const. Under the Constitution, the states have neither been provided the power to add nor take away from the conditions lawfully imposed by Congress upon admission or residency in the United States or the several states. In Hines v. Davidowitz (1941), 312 U.S. 52,61 S.Ct. 399, 85 L.Ed. 581, the court struck down a Pennsylvania *Page 67 
alien registration statute on the grounds that the federal government had preempted the field. The court stated:
 "Where the federal government, in the exercise of its superior authority in this field, has enacted a complete scheme of regulations . . . states cannot, inconsistent with the purpose of Congress, conflict or interfere with, curtail or complement the federal law, or enforce additional or auxiliary regulations." 312 U.S. at 66-67.
To deny an individual, citizen or alien, the right to work in the common occupations of the community is to deprive him of the freedoms the Fourteenth Amendment was intended to secure. This issue was effectively laid to rest by the court in Treux v. Raich
(1915), 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131. It was stated there:
 "The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work." 239 U.S. at 42.
The statutes involved herein operate to both deny to aliens as a class, rights guaranteed under the equal protection clause of the Fourteenth Amendment, and directly challenge federal preemption in the immigration area. Certainly Congress never envisioned a situation whereby employment-qualified resident aliens would be shunted, by a necessity, to those states choosing to extend their hospitality.
It is well settled that under traditional equal protection principles, a state retains broad discretion to classify as long as its classification has a reasonable basis. McGowan v. Maryland
(1961), 336 U.S. 420, 425-427, 81 S.Ct. 1101, 1106,6 L.Ed.2d 393. The above principle applies in the area of economics and social welfare. Dandridge v. Williams (1970), 397 U.S. 471, 485,90 S.Ct. 1153, 1161, 25 L.Ed.2d 491. In Graham v. Richardson
(1971), 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534, a case involving a challenge to both Arizona's and Pennsylvania's welfare laws which discriminated against aliens, the court stated:
 "[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a *Page 68 
`discrete and insular' minority (see United States v. Carolene Products Company, 304 U.S. 144, 152-153, 58 S.Ct. 778, 783-784, 82 L.Ed. 1234 (1938), for whom such heightened judicial solicitude is appropriate." 403 U.S. at 372.
In determining that a Connecticut rule of court requiring that applicants for the state bar exam be citizens violated the equal protection clause of the Fourteenth Amendment, it was stated:
 "The court has consistently emphasized that a state which adopts a suspect classification `bears a heavy burden of justification,' McLaughlin v. Florida, 379 U.S. 184, 196, 13 L.Ed.2d 222, 85 S.Ct. 283 (1964), a burden which, though variously formulated, requires the state to meet certain standards of proof. In order to justify the use of a suspect classification, a state must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is `necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." In re Griffith (1973), 413 U.S. 717, 723, 93 S.Ct. 2851, 37 L.Ed.2d 910.
The above legal theories were cited by the court in Sugarman v.Dugall (1973), 413 U.S. 63, 37 L.Ed.2d 853, 93 S.Ct. 2842, in holding that a New York statute which prohibited aliens from being appointed for any position in the competitive civil service violated the Fourteenth Amendment's equal protection guarantee. Similar logic was applied in holding that the federal government could not discriminate against aliens in competitive civil service positions where the government failed to demonstrate a compelling governmental interest. Mow Sun Wong v. Hampton (9th Cir. 1974), 500 F.2d 1031, Ramos v. United States Civil ServiceCommission v. Butz (D. P.R. 1974), 376 F. Supp. 361. See alsoPurdy v. State of California (1969) 456 P.2d 645,79 Cal. Rptr. 77, where a state statute prohibiting employment of resident aliens on public works was struck down on grounds that it directly conflicted with the equal protection clause of theFourteenth Amendment.
The sole and paramount interest of the state is in providing and maintaining as high a level of nursing expertise as is practical. Chapter 441 of the Statutes and accompanying pertinent sections of the Wisconsin Administrative Code adequately provide a *Page 69 
structural framework for achieving this end. The mechanisms and standards already exist for excluding the incompetent and ill prepared from the nursing profession and a broad exclusion of aliens as a class is clearly unnecessary.
It is entirely conceivable that a resident alien could have received his or her entire formal education within the State of Wisconsin and subsequent thereto be denied eligibility to take the nursing certification exam on the tenuous ground of a citizenship deficiency. Equally discriminatory is the situation where an individual receives the requisite professional training in the Wisconsin educational system and subsequent thereto is denied the opportunity to sit for the nursing exam but is allowed to take the exam in another state. Upon successfully passing the exam and subsequent licensing, that individual would again be denied the opportunity to return to Wisconsin and practice nursing. Such a denial would be predicated not on qualification but solely on a deficiency of citizenship.
In your second question you ask that if the statutes here in question are found to be unconstitutional, what posture should the Board of Nursing assume as to their enforcement.
It is my opinion that you should disregard the citizenship requirement in secs. 441.04, 441.07, and 441.10, Stats. with respect to resident aliens.
BCL:CRL